STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Lance R. WARD, Defendant-Appellant.

Supreme Court

*No. 97–2008–CR. Oral argument September 10, 1999.—Decided January 19, 2000.*

## 2000 WI 3

(Also reported in 604 N.W.2d 517.)

726

For the plaintiff-respondent-petitioner the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Daniel P. Dunn* and *Dunn Law Offices*, Madison and oral argument by *Daniel P. Dunn.*

Amicus Curiae brief and oral argument by *Howard B. Eisenberg*, Milwaukee for The Wisconsin Association of Criminal Defense Lawyers.

¶ 1. WILLIAM A. BABLITCH, J. The State of Wisconsin (State) seeks review of a court of appeals' decision that reversed a judgment of the circuit court convicting the defendant, Lance R. Ward (Ward), on his no-contest plea to two counts of possession of a controlled substance with intent to deliver. The court of appeals held that evidence seized during the search of Ward's home should have been suppressed because the affidavit submitted to the warrant-issuing judge in support of the search warrant failed to provide a substantial basis for finding probable cause that evidence of criminal activity was likely be found at that site. *State v. Ward*, 222 Wis. 2d 311, 333, 588 N.W.2d 645 (Ct. App. 1998).

¶ 2. Two issues are raised on review. The first issue is whether the warrant to search for drugs at Ward's home was supported by probable cause. We conclude that the warrant-issuing magistrate had a substantial basis for finding probable cause to issue the warrant to search Ward's home, and accordingly we reverse on that issue.

¶ 3. The second issue, not reached by the court of appeals, is whether the evidence should be suppressed because officers executed an unlawful no-knock entry into the Ward residence in violation of the rule of announcement. At the time of entry, the police action was in conformance with then-existing law, subsequently changed by the United States Supreme Court. We conclude that the evidence should be admitted because the police officers acted in good faith reliance on law that was controlling at the time of the search.

¶ 4. The facts underlying this action are these. On December 4, 1996, Detective Douglas Anderson of the City of Beloit Police Department applied for a search warrant for the home of Lance R. Ward at 1663 Royce in Beloit. Detective Anderson presented an affidavit to Rock County Circuit Court Judge James E. Welker in support of the search warrant. The following facts were set forth in Anderson's affidavit.

¶ 5. First, the affidavit stated that on November 27, 1996, Beloit police received a tip from a Crime Stopper that a second individual, Darrell Vance, "sells pounds of marijuana." The Crime Stopper told police that Vance would order marijuana and within a day or two distribute one to two pounds to each of his dealers. On November 29, Beloit police executed a search warrant at the Vance home and recovered 3,311 grams of marijuana, over $11,000 in cash, .3 grams of crack

729

cocaine and other items including tetrahydrocannabinol (THC) roaches and several scales.

¶ 6. On November 30, 1996, a Vance family member contacted Detective Anderson to report that Vance identified an individual named "Lance" as his marijuana supplier. On December 2, Vance, in the custody of the Beloit police, contacted the police to make a deal. Vance identified " 'Lance' who lives on Royce" as his supplier. The Beloit tax rolls listed property at 1663 Royce as owned by Lance R. Ward.

¶ 7. Second, the affidavit stated that the confidential files maintained by the Beloit Police Department Special Operations Bureau contained four pieces of information indicating that Lance Ward is a drug dealer.

¶ 8. Third, the affidavit stated that based upon Detective Anderson's training and experience, individuals engaged in criminal activity, including drug-related crimes, often arm themselves with firearms and attempt to destroy or conceal evidence if given time. For these reasons, Detective Anderson requested the issuance of a no-knock search warrant.

¶ 9. Finally, the affidavit stated that Detective Anderson, based upon his training and experience, believed that when illegal drugs are bought and sold the parties commonly carry illegal drugs on their body.

¶ 10. Judge Welker issued the search warrant. The warrant authorized a no-knock entry.

¶ 11. Officers executed the warrant on the evening of its issuance. Although Ward was in his home watching television, the house appeared dark. The police did not knock. Officers used a battering ram to break down the door of Ward's home. The officer using the battering ram began swinging it as soon as a second officer yelled "Police. Search Warrant." Officers seized

180.9 grams of cocaine, 2,578.6 grams of marijuana, two THC pipes, rolling papers, several scales, and other items. Although ammunition was seized, no weapons were found.

¶ 12. Ward subsequently offered two motions to suppress the evidence seized at his home. Judge Welker, who had authorized the search warrant, presided at the suppression hearing.

¶ 13. First, Ward argued that the affidavit for the warrant did not allege sufficient sworn facts to establish probable cause to believe that evidence of criminal activity would be found at Ward's home. Judge Welker determined that the petition for a warrant contained sufficient facts to draw a reasonable inference that there was evidence of a crime at Ward's Royce Street home.

¶ 14. At the motion hearing, Ward's defense counsel argued that the police did not present any facts in their affidavit from which it could be inferred that illegal drugs were kept at the Ward residence:

> THE COURT: What about my experience has (sic) been that in the last eight years, I have had numerous cases that deal with this kind of thing, and I can't remember a time when somebody was dealing drugs when they weren't being dealt out of the person's house? Now, maybe there are different customs everywhere, but here in Beloit, that's been every case that I have ever had.
>
> Defense Counsel: But are you allow—you can make inferences based on reasonableness. That's what the Court says. But don't you think you need a factual basis to make the inference? I mean, if Lance Ward lived on Royce Street—
>
> THE COURT: Well, you seem to agree that there was sufficient information here to issue a warrant to arrest Mr. Ward.

Defense Counsel: I think that there is information indicating he was the dealer. I think that you probably could have issued a warrant for his arrest.

THE COURT: All right. Well, if that's the case, if there is enough evidence—if there is enough information to arrest his person, and if my experience is that drug dealers ordinarily deal drugs out of their houses, why isn't there enough evidence then to search his house?

Defense Counsel: Because nobody told you that. . .drug dealers deal out of their houses.

THE COURT: You don't think I can rely on my own experience?

Defense Counsel: No. . . .I think you can rely on your own experience in making inferences from facts, but I don't believe that you can make inferences in a search warrant based upon information that you know which is not supportive, at least by a factual allegation, within the four corners of a warrant.

. . .

THE COURT: I have had numerous, numerous experiences with respect to drug dealers in the Beloit community, and I do believe that I'm entitled to draw the inference that, when the police have established that there is a drug dealer who is dealing large amounts of drugs, I believe I am able to draw the inference that the high probability is that those drugs are being dealt out of his place of residence, and that's based upon my experience, and I think that I can't—I don't think that a magistrate is required to shut his eyes to that fact.

Judge Welker subsequently denied this motion.

¶ 15. Ward's second motion was to suppress the physical evidence seized by police based upon of the

violation of the rule of announcement.[1] Judge Welker denied this motion. Thereafter, Ward pled no contest to two counts of possession of a controlled substance with intent to deliver.

¶ 16. A sentencing hearing was scheduled for May 14, 1997. Prior to the hearing, the United States Supreme Court decided *Richards v. Wisconsin*, 520 U.S. 385 (1997). In *Richards*, the Court disagreed with our rule permitting an exception to the rule of announcement when officers execute a search warrant in felony drug investigations. Ward requested the reconsideration of his motions to suppress the seized evidence. Both motions were denied. In considering the impact of *Richards*, Judge Welker stated that the purpose of the exclusionary rule is to deter misconduct. The judge concluded that this purpose would not be served in this situation, in which the officers relied upon a warrant that was issued in compliance with what was then the controlling law. Ward appealed his conviction.

¶ 17. The court of appeals reversed. The court of appeals held that the affidavit presented to Judge Welker in support of a warrant to search the Ward residence did not provide a substantial basis for finding probable cause that evidence of drug dealing would likely be found at the Royce Street address. *Ward*, 222 Wis. 2d at 333. The court of appeals stated:

---

[1] The rule of announcement requires "police to do three things before forcibly entering a home to execute a search warrant: 1) announce their identity; 2) announce their purpose; and 3) wait for either the occupants to refuse their admittance or, in the absence of an express refusal, allow the occupants time to open the door." *State v. Stevens*, 181 Wis. 2d 410, 423, 511 N.W.2d 591 (1994); *State v. Meyer*, 216 Wis. 2d 729, 734–35, 576 N.W.2d 260 (1998).

> Although we will defer to a magistrate's conclusion whenever possible, and we will permit reasonable inferences to sustain the reliability and timeliness of information in a warrant application, neither the Fourth Amendment nor Article I, § 11 of the Wisconsin Constitution permits a magistrate to infer a link between evidence of drug dealing and the dealer's residence when the application is devoid of any facts or information from which to infer such a link.

*Id.*

¶ 18. Having concluded that the warrant to search Ward's home lacked probable cause, the court of appeals did not reach Ward's motion to suppress for violation of the rule of announcement. *Id.* at 335.

¶ 19. The State filed a petition for review, which we granted.

I

¶ 20. The first issue we consider is whether the affidavit upon which the search warrant was based contained sufficient facts to support a finding of probable cause to believe that evidence of a crime would be found at Ward's residence. We conclude that the warrant-issuing judge had a substantial basis for finding that there was probable cause to issue the warrant to search the Ward residence.

■■■■

¶ 21. Search warrants may issue only upon "a finding of probable cause by a neutral and detached magistrate." *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (citing *State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990)). In reviewing whether there was probable cause for the issuance of a search warrant, we accord great deference to the deter-

mination made by the warrant-issuing magistrate. *Id.* The magistrate's determination will stand unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding. *Id.* It is the duty of the reviewing court to ensure that the magistrate had a substantial basis to conclude that the probable cause existed. *Id.*

¶ 22. Our deference to the magistrate's probable cause determination supports the well-established preference under the Fourth Amendment that searches be conducted pursuant to a warrant. *Id.* at 990 (quoting *DeSmidt*, 155 Wis. 2d at 133).

¶ 23. A finding of probable cause is a common sense test.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶ 24. When a warrant-issuing judge's determination of probable cause is doubtful or marginal, we examine it in light of this strong preference that law enforcement officers conduct searches pursuant to a warrant. *Higginbotham*, 162 Wis. 2d at 990.

¶ 25. In this case, Ward asserts that Judge Welker did not confine his probable cause determination to the circumstances set forth in the affidavit.

735

Ward argues that Judge Welker supplied facts to the affidavit based upon his own experience and then made inferences from the facts he provided to establish probable cause.

■■■

¶ 26. Whether there is probable cause to believe that evidence is located in a particular place is determined by examining the "totality of the circumstances." *DeSmidt,* 155 Wis. 2d at 131 (quoting *Gates,* 462 U.S. at 238). We agree with Ward that a probable cause determination must be based upon what a reasonable magistrate can infer from the information presented by the police. " 'The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application.' " *United States v. Khounsavanh,* 113 F.3d 279, 283 n.1 (1st Cir. 1997) (quoting *United States v. Zayas-Diaz,* 95 F.3d 105, 111 (1st Cir. 1996)). We therefore consider only the facts presented to the magistrate. A magistrate issuing a warrant must be neutral and independent and must act in a neutral and a detached manner. *State ex rel. Pflanz v. County Court,* 36 Wis. 2d 550, 560, 153 N.W.2d 559 (1967) (citations omitted). The subjective experiences of the magistrate are not part of the probable cause determination.

¶ 27. Therefore, we must consider whether objectively viewed, the record before the warrant-issuing judge provided " 'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.' " *State v. Kerr,* 181 Wis. 2d 372, 378, 511 N.W.2d 586 (1994) (quoting *State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978)). Ward contends that without Judge

Welker's reliance on his experience to infer that evidence of criminal activity would be found at Ward's residence, Detective Anderson's affidavit is insufficient because it contains no statement creating a nexus between the items sought and Ward's residence on Royce Street. However, our examination of the facts leads to the conclusion that the information presented to the warrant-issuing judge was sufficient for a reasonable person to logically infer that evidence would be found at Ward's home. *DeSmidt*, 155 Wis. 2d at 131–32, 135.

¶ 28. The purpose behind the constitutional requirement of obtaining a search warrant is not to deny law enforcement officers the support of the usual inferences that reasonable individuals may draw from evidence. *Id.* at 135 (quoting *Starke*, 81 Wis. 2d at 409). The Fourth Amendment simply requires that a neutral and detached magistrate draw inferences instead of a law enforcement officer who is " 'engaged in the often competitive enterprise of ferreting out crime.' " *State v. Beal*, 40 Wis. 2d 607, 613, 162 N.W.2d 640 (1968)(quoting *Johnson v. United States*, 333 U.S. 10, 13–14 (1948)). Thus, "[a]lthough the finding cannot be based on the affiant's suspicions and conclusions, the magistrate may make the usual inferences reasonable persons would draw from the facts presented." *Bast v. State*, 87 Wis. 2d 689, 693, 275 N.W.2d 682 (1979).

¶ 29. The facts supporting a finding of probable cause to search are as follows. The affidavit states that Derrell Vance "sells pounds of marijuana." Vance distributes marijuana to his dealers. A search of the Vance home turned up 3,311 grams of marijuana and over $11,000 in cash. It can be reasonably inferred from these facts that Vance is himself a substantial dealer.

¶ 30. Vance identifies his supplier as Lance who lives on Royce. Vance supplies no other address or location. We agree with the State that it can be inferred from this information that Vance obtained the marijuana from Lance where Lance lived, on Royce. Given the large quantity of drugs involved, the link of a supplier of drugs and an address, plus the reasonable inference that Vance deals in a high volume of drugs and therefore "Lance" is an even bigger fish, leads us to conclude that the affidavit presents a substantial basis to find probable cause to believe that illegal items will be found at the home of Lance Ward on Royce. The obvious and reasonable inference is that Lance dealt drugs from his home. It is not the only inference that can be drawn, but it is certainly a reasonable one. The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one.

¶ 31. Although Ward argues that this type of inference cannot be made without an explicit statement in the affidavit linking the illegal drugs to the Ward residence, we disagree.

¶ 32. We have rejected taking an overly technical and formalistic approach to the contents of an affidavit.

> '[A]ffidavits for search warrants,. . .must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

> Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . .'

*Higginbotham*, 162 Wis. 2d at 991–92 (quoting *Starke*, 81 Wis. 2d at 410).

¶ 33. Ward contends that had Detective Anderson inserted a sentence in his affidavit to the effect that Ward is a drug dealer and, based upon the detective's experience, drug dealers keep drugs in their homes, the affidavit would have been satisfactory. Ward makes a similar argument in distinguishing this case from *State v. Bernth*, 246 N.W.2d 600 (Neb. 1976). In *Bernth*, the Nebraska Supreme Court considered whether a search warrant was supported by sufficient grounds to believe that marijuana was kept at the defendant's residence. *Id.* at 601. The affidavit offered by police stated that the defendant had told a police informant that he had "pounds of grass for sale," and that the informant had identified the defendant's place of residence. *Id.* The affiant also stated that he believed the controlled substance was situated at the residence. *Id.* Ward contends that this statement in *Bernth* by the affiant created a nexus between the items sought and the location. We believe this level of formalism is not in keeping with the totality of the circumstances test. As the *Bernth* court noted, "[s]eldom can an affiant seeking a search warrant state positively that a certain residence contains contraband. Such a conclusion can

739

only be arrived at by a magistrate on consideration of known facts and common-sense probabilities." *Id.* at 602.

¶ 34. Our reasoning in *State v. Tompkins*, 144 Wis. 2d 116, 423 N.W.2d 823 (1988), applies here. Where there is evidence that would lead a reasonable person to conclude "that the evidence sought is likely to be in a particular location," there is probable cause for a search of that location, even if it may also be reasonable to conclude that the evidence may be in a second or third location as well. *Id.* at 125. We conclude that the warrant-issuing judge could reasonably infer that because Darrel Vance, himself a high volume dealer, identified "Lance on Royce" as his supplier, and that Lance Ward owned a home on Royce, there was probable cause to search the Ward residence.

¶ 35. Finally, Ward contends that Vance, the informant, was inherently unreliable because Vance had no past record of reliability and was attempting to bargain his way out of jail. When considering this issue Judge Welker stated that Vance was making an inculpatory statement under circumstances where, if his statements were found to be untruthful, Vance would be in deeper trouble. Under these circumstances, the judge found Vance to be reliable. We find Judge Welker's conclusion to be reasonable.

■■■

¶ 36. In finding that the affidavit supplied sufficient facts from which to draw an inference of probable cause to search, we are not suggesting that when there is sufficient evidence to identify an individual as a drug dealer, as all the parties conclude there was, that there is sufficient evidence to search the suspect's home. In this case, the affidavit identifies one address in Beloit and two individuals who both deal drugs in volume.

Accordingly, we find sufficient facts in the affidavit to connect illegal drugs to the Ward residence and therefore find a basis for finding probable cause to issue a search warrant.[2]

## II

¶ 37. We turn then to Ward's second basis for arguing that evidence seized by the Beloit police should be suppressed. Ward argues that the evidence seized at his home is inadmissible because it was obtained as the result of an unconstitutional violation of the rule of announcement. " 'Whether searches and seizures pass constitutional muster is a question of law, which this court reviews without deference to the lower courts.' " *State v. Meyer*, 216 Wis. 2d 729, 746, 576 N.W.2d 260 (1998) (quoting *State v. Guy*, 172 Wis. 2d 86, 93, 492 N.W.2d 311 (1992)).

¶ 38. For Fourth Amendment purposes, an entry that does not comply with the rule of announcement "is justified if police have a 'reasonable suspicion' [under the particular circumstances] that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation." *Meyer*, 216 Wis. 2d at 749–50 (quoting *United States v. Ramirez*, 523 U.S. 65, 67–68 (1998)). Following the principles set forth by the Supreme Court, we have held that when there is no compliance with the rule there must exist particular facts to support an officer's reasonable suspicion that exigent circumstances exist. *Id.* at 751.

---

[2] Because we find the search warrant was supported by probable cause, we do not reach the State's argument suggesting that the evidence seized at the Ward home is admissible under a good faith exception to the exclusionary rule.

¶ 39. The nature and structure of our federal system of government shape our analysis of the no-knock issue presented in this case. In general, state courts exercise concurrent jurisdiction with the federal courts in cases arising under the Constitution of the United States. "The two together form one system of jurisprudence, which constitutes the law of the land for the State. . . ." *Claflin v. Houseman, Assignee*, 93 U.S. 130, 137 (1876). On federal questions, the determinations of the United States Supreme Court are binding upon state courts. *State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993). However, " '[u]ntil the Supreme Court of the United States has spoken, state courts are not precluded from exercising their own judgment upon questions of federal law.' " *Id.* (quoting *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir. 1970)). This court "has been designated by the constitution and the legislature as a law-declaring court." *State ex rel. La Crosse Tribune v. Circuit Ct.*, 115 Wis. 2d 220, 230, 340 N.W.2d 460 (1983). Our decisions interpreting the United States Constitution are binding law in Wisconsin until this court or the United States Supreme Court declares a different opinion or rule.

¶ 40. In *Stevens*, 181 Wis. 2d at 424–25, this court initially adopted a rule providing that when the police have a search warrant, supported by probable cause, to search a residence for evidence of felony drug delivery or dealing, the officers are justified in making a no-knock entry. Subsequent to our decision in *Stevens*, the Supreme Court held that the rule of announcement forms part of the Fourth Amendment reasonableness inquiry. *Wilson v. Arkansas*, 514 U.S. 927 (1995). In light of *Wilson*, we considered whether

the Fourth Amendment allows a blanket exception to the general requirement of "knock and announce" for entries into premises pursuant to a search warrant for evidence of felonious drug delivery. *State v. Richards*, 201 Wis. 2d 845, 549 N.W.2d 218 (June 12, 1996). In *Richards* we reaffirmed our rule that "exigent circumstances are always present in the execution of search warrants involving felonious drug delivery: an extremely high risk of serious if not deadly injury to the police as well as the potential for the disposal of drugs by the occupants prior to entry by the police." *Id.* at 847–48.

¶ 41. Thus on December 4, 1996, when Judge Welker signed the search warrant and authorized a no-knock entry into the Ward residence, the law in Wisconsin for over two years, and as twice affirmed by this court, authorized police executing a search warrant for evidence of felonious drug activity to make a no-knock entry. However, three months after the search of Ward's home, the Supreme Court issued an opinion in apparent disagreement with our conclusion that the Fourth Amendment permits a *per se* exception to the rule of announcement when officers execute a search warrant in a felony drug investigation. *Richards v. Wisconsin*, 520 U.S. at 388.

¶ 42. We review this chronology of events to emphasize that although the officers in this case did not comply with the rule of announcement, this was not due to negligence, a mistake of law, or willful or malicious misconduct by the officers. All the parties relied upon a rule set forth as a matter of judicial discretion by this court in *Stevens* and *State v. Richards*. We thus begin our analysis as one that requires this court to consider what is the appropriate remedy when evidence is seized in conformance with controlling law as

articulated by this court which is subsequently reversed.

¶ 43. To begin, we first consider whether the violation of the rule of announcement comes before us as a question to be considered under the Fourth Amendment to the United States Constitution,[3] an issue arising under art. I, § 11 of the Wisconsin Constitution,[4] or both. We find that both the Wisconsin Constitution and the Fourth Amendment are properly before this court.

¶ 44. The State asserts Ward's motion to suppress evidence seized due to a violation of the rule of announcement arises only under the Fourth Amendment. As a result, the State contends that this court should therefore limit its consideration of the issue to Fourth Amendment jurisprudence. As a matter of Fourth Amendment jurisprudence, the State argues that the evidence should be admitted under the good faith exception to the exclusionary rule.[5] *Illinois v. Krull*, 480 U.S. 340 (1987). Ward contends that his

---

[3] Amendment IV of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[4] Article I, § 11 of the Wisconsin Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

[5] For the purposes of this case we assume without deciding that the exclusionary rule is the proper remedy for a violation of the rule of announcement.

motion to suppress the physical evidence seized because of the violation of the rule of announcement was preserved on state and federal grounds. We agree that both the Fourth Amendment and art. I, § 11 of the Wisconsin Constitution are at issue here.

¶ 45. Although it is the general rule that issues not raised or considered in the circuit court will not be considered for the first time on appeal, this rule is not absolute. *Apex Electronics Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998); *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). "When an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address the issue." *Apex Electronics Corp.*, 217 Wis. 2d at 384. Application of art. I, § 11 of the Wisconsin Constitution is a question of law. The parties briefed the issue of an exception to the exclusionary rule in their arguments regarding the first issue in this case, the validity of the search warrant. Amici curiae also submitted a brief discussing the exclusionary rule as a matter of state constitutional law, to which the State filed an in-depth response. In addition, at oral argument, counsel for Ward specifically discussed this issue. In addition, although our decision in this case will affect only a narrow band of cases arising between our holding in *State v. Richards* and *Richards*, we consider the question of the application of the Wisconsin Constitution to this matter to be of sufficient public interest to merit our address. Finally, a consolidated case decided today invokes both the Wisconsin and United States Constitutions. *State v. Orta*, 2000 WI 4,

231 Wis. 2d 782, 604 N.W.2d 543.[6] Therefore, to the extent that there are any doubts on this point, we exercise our discretion and address the Wisconsin constitutional issue as well as the Fourth Amendment issue presented in this case.

■■

¶ 46. The exclusionary rule bars evidence obtained in an illegal search and seizure from a criminal proceeding against the victim of the constitutional violation.[7] *Krull*, 480 U.S. at 347. The Supreme Court has stated that "the [exclusionary] rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calendra*, 414 U.S. 338, 348 (1974) (footnote omitted). Application of the rule "has been restricted to those areas where its remedial

---

[6] In *State v. Orta*, 2000 WI 4, 231 Wis. 2d 782, 604 N.W.2d 543, a consolidated case, officers executing a search warrant made a no-knock entry that was valid under our rule from *State v. Stevens*, 181 Wis. 2d 410, 511 N.W.2d 591 (1994) and *State v. Richards*, 201 Wis. 2d 845, 549 N.W.2d 218 (1996). As in this case, the defendants moved to suppress the evidence seized by the police after the United States Supreme Court decided *Richards v. Wisconsin*, 520 U.S. 385 (1996). For the reasons set forth in this opinion, we held in *Orta* that the evidence seized in that case is admissible. *Orta*, 2000 WI 4, ¶ 2.

[7] The State argues that the exclusionary rule does not generally apply to evidence seized in the execution of a search warrant after a violation of the rule of announcement. According to the State, when a violation of the Fourth Amendment occurs, the court must find sufficient causal relationship between the violation and the discovery of evidence to support application of the exclusionary rule. *United States v. Ramirez*, 523 U.S. 65, 72 n.3 (1998). Because we deny the motion to suppress on other grounds, we need not address this issue.

objectives are thought most efficaciously served." *Id.* at 348.

¶ 47. "The [exclusionary] rule is calculated to prevent, not repair." *Elkins v. United States*, 364 U.S. 206, 217 (1960). Although this remedial principle appears to be the sole pillar supporting the Supreme Court's contemporary rationale for application of the exclusionary rule a second principle, judicial integrity, has been cited in the Court's exclusionary rule jurisprudence:

> It was of this [judicial integrity] that Mr. Justice Holmes and Mr. Justice Brandeis so eloquently spoke in *Olmstead v. United States*. . . ."For those who agree with me," said Mr. Justice Holmes, "no distinction can be taken between the Government as prosecutor and the Government as judge.". . ."In a government of laws," said Mr. Justice Brandeis, "existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."

*Elkins*, 364 U.S. at 222–23 (quoting *Olmstead v. United States*, 277 U.S. 438, 470, 485 (1928)).

747

¶ 48. Whether the purpose of the exclusionary rule is solely remedial or also a matter of judicial integrity, the Supreme Court has made clear that for Fourth Amendment purposes "the policies behind the exclusionary rule are not absolute. Rather, they must be evaluated in light of competing policies." *Stone v. Powell*, 428 U.S. 465, 488 (1976). In *Powell* the Supreme Court said:

> Although our decisions often have alluded to the 'imperative of judicial integrity,' they demonstrate the limited role of this justification in the determination whether to apply the rule in a particular context. . . . While courts, of course, must ever be concerned with preserving the integrity of the judicial process, this concern has limited force as a justification for the exclusion of highly probative evidence.

*Id.* at 485 (internal citation and footnotes omitted).

¶ 49. In this case, we do not believe that excluding the evidence seized by the police will serve any remedial objective, or that judicial integrity is sullied by admission of the evidence. On December 4, 1996, the officers' actions were in conformance with the law in Wisconsin, as articulated by this court, allowing for no-knock entries. The greenest law student, the savviest defense counsel, and a roomful of law professors would have reached the same conclusion. We find it impossible to say that under such facts and in consideration of binding federal precedent, the exclusionary rule should be applied to this violation of the rule of announcement.

¶ 50. Our conclusion is supported by the rule articulated by the Supreme Court in *Krull*. In *Krull*, police officers conducted a search pursuant to an Illi-

nois statute authorizing warrantless administrative searches of certain premises licensed by the state. *Krull*, 480 U.S. at 342–44. The Illinois Supreme Court subsequently found that the statute violated the Fourth Amendment, and the evidence seized pursuant to the statute was suppressed. *Id.* at 346. The United States Supreme Court concluded that the evidence should be admitted under a good-faith exception to the Fourth Amendment exclusionary rule. *Id.* at 346, 360. The Court stated:

> The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.

*Krull* at 349–50.

¶ 51. The court in *Krull* indicated it was "concerned solely with whether the detective acted in good faith reliance upon an apparently valid statute." *Id.* at 357 n.13. The Court found that he did. *Id.* at 360. In this case we are concerned solely with whether the officers acted in good faith reliance upon the pronouncements of this court.

¶ 52. Execution of a no-knock entry in this case was founded upon a rule articulated by this court. Hav-

ing been obtained pursuant to the search and seizure principles we expounded, we cannot say now that the subsequent change in Fourth Amendment jurisprudence has somehow transformed the character of the evidence seized at the Ward home into something so tainted that it mars judicial integrity. Nor will any remedial purpose be achieved through exclusion of the evidence when the officers and magistrate followed, rather than defied, the rule of law. Accordingly, we conclude that the evidence is admissible under the Fourth Amendment.

¶ 53. We turn then to art. I, § 11 of the Wisconsin Constitution. We conclude that in this case, the Wisconsin Constitution does not require exclusion of the evidence seized at the Ward residence.

¶ 54. Issues of federalism and sovereignty again shape our discussion. The holdings of the United States Supreme Court do "not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." *Cooper v. California,* 386 U.S. 58, 62 (1967). We have also stated:

> This court. . .will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded.

*State v. Doe,* 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977).

¶ 55. The text of art. I, § 11 of the Wisconsin Constitution and the text of the Fourth Amendment of the United States Constitution are essentially identical. *Tompkins,* 144 Wis. 2d at 131. Our interpretation of

the Wisconsin search and seizure provision has normally been consistent with the requirements of the United States Constitution as interpreted by the Supreme Court. *Id.* at 133. Therefore as an initial matter, the rule of announcement is one part of the reasonableness inquiry under art. I, § 11 of the Wisconsin Constitution, in conformity with the Supreme Court's decision in *Wilson v. Arkansas*, 514 U.S. at 930.

¶ 56. Thus, we next consider whether the evidence seized at the Ward residence should be suppressed pursuant to the Wisconsin exclusionary rule adopted in *Hoyer v. State*, 180 Wis. 407, 193 N.W. 89 (1923).

¶ 57. We first consider whether the exclusionary rule adopted in *Hoyer* is merely a judge-made rule, as the State contends, or whether, as the defendant argues, it is a personal right under the Wisconsin Constitution. We have decided this question and there is no need to revisit it. When discussing the exclusionary rule in *Tompkins*, we stated:

> The protection of rights and the preservation of judicial integrity depend in reality on the deterrent effect of the exclusionary rule. Unlawful police conduct is deterred when evidence recovered in unreasonable searches is not admissible in courts. The Wisconsin cases discussed in *Hoyer* and statements of that court all concerned judicial protection against police oppression. That is, the exclusionary rule developed as a judicial remedy to deter unreasonable searches and seizures. The fourth amendment was and is a limit on the powers of government.

*Tompkins*, 144 Wis. 2d at 133–34.

¶ 58. We do not reexamine our conclusions in *Tompkins* that the exclusionary rule in Wisconsin is a

751

judicial remedy. However, we concur with the views expressed by the Vermont Supreme Court which stated that "[e]ven if our exclusionary rule were no more than a judicially created remedy, this Court would maintain the obligation to ensure that the remedy effectuates [state constitutional] rights." *State v. Oakes*, 598 A.2d 119, 121 (Vt. 1991). The Vermont Supreme Court further stated:

> By treating the federal exclusionary rule as a judicially created remedy rather than a constitutional right, the Supreme Court's decision focuses, not on interpretation of the federal constitution, but on an attempted empirical assessment of the costs and benefits of creating a good faith exception to the federal exclusionary rule. This empirical assessment can inform this Court's decision on the good faith exception only to the extent that it is persuasive. If the assessment is flawed, this Court cannot simply accept the conclusion the Supreme Court draws from it. To do so would be contrary to our obligation to ensure that our state exclusionary rule effectuates [the state constitutional] rights, and would disserve those rights.

*Id.* 598 A.2d at 122.

¶ 59. Although we generally conform art. I, § 11 to Fourth Amendment jurisprudence, it would be a sad irony for this court to exhort magistrates to act as something more than "rubber stamps" when issuing warrants, and to then act as mere rubber stamps ourselves when interpreting our Wisconsin Constitution. It is our responsibility to examine the State Constitution independently. This duty exists even though our conclusions in a given case may not differ from those reached by the Supreme Court when it interprets the

Fourth Amendment. *State v. Guzman*, 842 P.2d 660, 667 (Idaho 1992).

¶ 60. In this case, because the police and magistrate relied upon our rule from *State v. Richards*, we conclude that the Wisconsin Constitution does not require suppression of the evidence.

¶ 61. In determining whether this evidence should be excluded under the Wisconsin Constitution, we find persuasive the rational used in *United States v. Peltier*, 422 U.S. 531 (1975). In *Peltier*, Border Patrol agents stopped a vehicle 70 air miles from the Mexican border. *Peltier*, 422 U.S. at 533. The Border Patrol searched the vehicle and seized 270 pounds of marijuana from the trunk of the car. *Id.* at 532. Four months after this stop occurred, the United States Supreme Court "held that a warrantless automobile search, conducted approximately 25 air miles from the Mexican border by Border Patrol agents, acting without probable cause, was unconstitutional under the Fourth Amendment." *Id.* at 532–33 (citing *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973)). Although the stop of Peltier was unconstitutional under the rule from *Almeida-Sanchez*, the Supreme Court decided that the evidence should not be excluded. The Supreme Court stated that the basis for the stop was founded upon the Border Patrol's reliance upon a federal statute, administrative regulations implementing the statute, and continuous judicial approval of the regulation. *Id.* at 540–41. The Supreme Court stated:

> [u]nless we are to hold that parties may not reasonably rely upon any legal pronouncement emanating from sources other than this Court, we cannot regard as blameworthy those parties who conform their conduct to the prevailing statutory or constitutional norm. If the purpose of the exclusionary

753

> rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* at 542 (internal citations and footnote omitted).

¶ 62. Similarly, we believe that law enforcement officers and magistrates must be allowed to reasonably rely upon the pronouncements of this court. Therefore, we hold that under the Wisconsin Constitution the evidence seized at the Ward residence is admissible. The officers acted in reliance upon pronouncements of this court. That is the only issue before us and is the only issue we decide.

¶ 63. In summary, we conclude that the warrant was issued with probable cause to search Ward's residence. In addition, the officers' failure to comply with the rule of announcement violated the Fourth Amendment and art. I, § 11 of the Wisconsin Constitution. However, because the officers relied, in objective good faith, upon the pronouncements of this court we hold that exclusion of the evidence would serve no remedial objective and, therefore, the evidence seized at the Ward residence should be admitted. Finally, we hold that as a matter of state constitutional law the evidence is properly admissible.[8]

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

---

[8] Having concluded that the evidence is admissible under the Wisconsin Constitution because the officers relied upon a rule established by this court, we need not consider the State's alternative argument that the officers reasonably relied upon the no-knock search warrant.

¶ 64. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I disagree with the majority opinion on two grounds:

¶ 65. First, the majority opinion errs in refusing to suppress evidence seized by law enforcement officers in the defendant's home. I conclude there is no nexus in the warrant application in this case between the defendant's home and the defendant's drug-dealing activities to establish probable cause to search the home.[1]

¶ 66. Second, the majority opinion errs in refusing to suppress evidence seized by law enforcement officers who failed to comply with the constitutionally based rule of announcement. I would not adopt the majority opinion's exception to the exclusionary rule.

I

¶ 67. I approach the question of probable cause to issue a search warrant for a drug dealer's home with the following basic principles in mind.

¶ 68. A moving force behind the enactment of the Fourth Amendment to the U.S. Constitution was to prohibit the government from conducting indiscriminate general searches.[2] Accordingly, a crucial element

---

[1] A number of courts confronted with facts similar to those presented in this case have concluded no nexus was established between the drug dealing and the defendant's home. These cases are discussed in the court of appeals thorough opinion. *See also State v. Thien*, 977 P.2d 582, 588 (Wa. 1999) (en banc) (warrant authorizing the search of a drug dealer's apartment must present specific evidence tying the residence to the illegal activity).

[2] *Payton v. New York*, 445 U.S. 573, 583–84 and n.21 (1980) (describing historical circumstances leading to the enactment of the Fourth Amendment).

in evaluating a search warrant under the Fourth Amendment is whether it is reasonable to believe that the item to be seized will be found in the place to be searched, here a home.[3] "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[4]

¶ 69. Before issuing a warrant a magistrate must be "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Higginbotham,* 162 Wis. 2d 978, 980, 471 N.W.2d 24 (1991) (internal quotations omitted). Our duty as a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed, giving deference to the magistrate's conclusion and accepting reasonable inferences to sustain the issuance of a warrant. *Id.* " '[T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime' "[5]

¶ 70. Applying these principles to the majority opinion, I conclude that, for big drug dealers, the majority has abandoned the rule that a magistrate must be apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought would be found in the place to be searched. The majority opinion has, instead, adopted a blanket general rule, a per se rule, that if a magistrate determines

---

[3] *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 n.6 (1978).

[4] *State v. Phillips,* 218 Wis. 2d 180, 195–96, 577 N.W.2d 794 (1998).

[5] *State v. Higginbotham,* 162 Wis. 2d 978, 995, 471 N.W.2d 24 (1991) (quoting *United States v. Freeman,* 685 F.2d 942, 949 (5th Cir. 1982)).

probable cause to believe that a person is a dealer in significant quantities of drugs[6] then it automatically follows there is probable cause to issue a warrant to search that person's home. Majority op. at ¶ 36.[7]

¶ 71. The State does not claim that the affidavit in support of the application for a search warrant in this case contained any direct evidence that the defendant had sold drugs out of his home or that any illegal items had been spotted there. The majority's decision upholding the issuance of the warrant apparently rests on two pieces of evidence. The first piece of evidence is that the defendant supplied drugs to other dealers. From this fact, the majority opinion states that the magistrate could conclude that the defendant was probably a "big" drug dealer.

¶ 72. The second piece of evidence is that an informant drug dealer referred to the defendant as "Lance on Royce." The city tax records, examined by a law enforcement officer, confirmed that Lance Ward owned a house at 1663 Royce Street. Neither the informant's reference to the street where the defendant

---

[6] The majority does not describe how to distinguish between "significant" and "insignificant" quantities of drugs.

[7] The majority appears to deny this holding. It states at ¶ 36 that it is "not suggesting that when there is sufficient evidence to identify an individual as a drug dealer. . .that there is sufficient evidence to search the suspect's house." It goes on to state: "In this case, the affidavit identifies one address in Beloit and two individuals who both deal drugs in volume." I do not understand how this cryptic sentence provides law enforcement officers, magistrates, circuit courts or the court of appeals with any guidance in deciding when an application to search the home of a drug dealer of significant quantities of drugs sufficiently connects the illegal activities to the home to be searched when the only information is that the person is a big drug dealer and lives on a specified street.

757

lived or the city tax records giving the defendant's exact home address suggest that drugs were sold from the defendant's home.

¶ 73. Thus the majority's holding that there was probable cause to believe the drugs were in the defendant's home does not rest on any specific evidence in the record tying the drugs to the home. Rather the majority's holding rests on the supposition that a magistrate may reasonably conclude, unless there is evidence to the contrary, that every drug dealer suspected of dealing in significant quantities of drugs keeps the drugs at home.

¶ 74. I conclude that the majority's holding is once again creating a drug exception to the Fourth Amendment "based on the 'culture' surrounding a general category of criminal behavior," contrary to *Richards v. Wisconsin*, 520 U.S. 385, 392 (1997). The U.S. Supreme Court in *Richards* overturned this court's blanket per se rule that all drug dealers may be presumed armed and that therefore no-knock entries to the home are justified in felony drug searches.

¶ 75. The general per se drug exception the majority creates today, allowing searches of the homes of "big" drug dealers, is subject to the same two criticisms that the U.S. Supreme Court leveled against the generalization about drug dealers that this court adopted in *Richards*. First, the majority opinion's new rule that "big" drug dealers keep drugs in their homes contains considerable overgeneralization. The *Richards* case, 520 U.S. at 393, condemned a similar generalization about drug dealers and arms. While "big" drug dealers may frequently keep drugs (or arms) in their homes, not every "big" drug dealer does so.

¶ 76. Second, the majority opinion's categorical rule that "big" drug dealers keep drugs in their homes

"can, relatively easily, be applied to others." In *Richards*, 520 U.S. 394, the Supreme Court condemned this court's categorical rule on drug dealers and arms on the grounds that the generalization could be applied to many crimes and thus undercut the Fourth Amendment requirement that individualized grounds to search a place be demonstrated.

¶ 77. If we follow the majority opinion's reasoning to its "common sense" conclusion, one can assume that, unless there is evidence to the contrary, every drug dealer (big, medium or small) and further everyone engaged in criminal activity (drugs or otherwise), keeps evidence of the criminal activity at home. This "common sense" reasoning swallows the Fourth Amendment requirement that applications for warrants must demonstrate reasonable grounds to believe that the item to be seized will be found in the place specified to be searched. "If a per se exception were allowed for each category," the Fourth Amendment requirement that a warrant application must demonstrate reasonable grounds to believe that the item to be seized will be found in the place to be searched "would be meaningless." *Richards*, 520 U.S. at 394.

¶ 78. I do not join the majority opinion because it substitutes a generalization, a per se rule, for the constitutional requirement that a nexus must appear in the warrant application between the place to be searched and the drug-dealing activities to establish probable cause to search the place specified. In sum, the majority opinion does not give adequate consideration to the Fourth Amendment's protection of the home against indiscriminate general searches.

## II

¶ 79. The majority opinion errs in adopting an exception to the exclusionary rule to refuse to suppress evidence seized by law enforcement officers who failed to comply with the constitutionally based rule of announcement.

¶ 80. The exclusionary rule prevents evidence that has been seized in violation of an accused's statutory or constitutional rights from being admitted into evidence. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). The U.S. Supreme Court has adopted a "good faith" exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984). The *Leon* case held that the exclusionary rule does not apply to evidence obtained by law enforcement officers acting on objectively reasonable reliance upon a search warrant issued by a neutral magistrate when the warrant was ultimately found to be unsupported by probable cause. 468 U.S. at 926.

¶ 81. The majority opinion does not adopt the *Leon* "good faith" exception to the exclusionary rule. The *Leon* good faith exception has been strongly criticized by state courts and commentators.[8] Indeed the

---

[8] In the fifteen years since the *Leon* case was decided, at least twelve states have rejected the good faith exception to the exclusionary rule as incompatible with their state constitutions. *See, e.g., State v. Marsala*, 579 A.2d 58 (Conn. 1990); *State v. Guzman*, 842 P.2d 660 (Idaho 1992); *People v. Sellars*, 394 N.W.2d 133 (Mich. App. 1986), *appeal denied*, 441 Mich. 867, 494 N.W.2d 495 (1986); *State v. Canelo*, 653 A.2d 1097 (N.H. 1995); *State v. Novembrino*, 519 A.2d 820 (N.J. 1987); *State v. Gutierrez*, 863 P.2d 1052 (N.M. 1993); *People v. Bigelow*, 488 N.E.2d 451 (N.Y. 1985); *State v. Carter*, 370 S.E.2d 553 (N.C. 1988); *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991); *State v. Taylor*, 1987 WL 25417 (Tenn. Crim. App. 1987); *State*

majority opinion studiously avoids citing *Leon*, 468 U.S. 897 (1984), the leading good faith case, and even steers clear of using the words "good faith." The majority opinion uses the words "good faith" only nine times, in six instances referring to other writers' use of the words (twice referring to the State's argument, twice referring to a U.S. Supreme Court holding,[9] and twice quoting from a case from the Vermont Supreme Court).[10]

¶ 82. Instead of relying on *Leon*, the majority opinion relies on *Illinois v. Krull*, 480 U.S. 340 (1987), a

---

*v. Oakes*, 598 A.2d 119 (Vt. 1991); *State v. Crawley*, 808 P.2d 773 (Wash. App. 1991).

The majority opinion discusses and relies on *State v. Oakes* and *State v. Guzman* (majority op. at ¶ 58), but does not acknowledge that both these cases reject the good faith exception to the exclusionary rule.

Another two states have rejected the good faith exception as impermissible under state statutory grounds. *Gary v. State*, 422 S.E.2d 426 (Ga. 1992); *Imo v. State*, 826 S.W.2d 714 (Tex. Ct. App. 1992).

Several states have expressed reservations about the good faith exception, although their highest courts have not specifically rejected it. *See, e.g., State v. Rothman*, 779 P.2d 1, 8 (Haw. 1989) (Hawaii has not yet adopted good faith exception); *State v. Martinez*, 411 N.W.2d 209, 149 (Ct. App. Minn. 1998) (Minnesota has not yet adopted good faith exception).

Several state courts have adopted the good faith exception to the exclusionary rule under their own state constitutions. *See, e.g., Morgan v. State*, 641 So. 2d 840 (Ala. 1994); *Jackson v. State*, 722 S.W.2d 831 (Ark. 1987); *State v. Brown*, 708 S.W.2d 140 (Mo. 1986) (en banc).

[9] *See* majority op. at ¶¶ 50–51 (referring to *Illinois v. Krull*, 480 U.S. at 346).

[10] *See* majority op. at ¶ 58, quoting *State v. Oakes*, 598 A.2d 119, 122 (Vt. 1991).

761

"*Leon*-based decision."[11] In *Krull*, the U.S. Supreme Court held that the exclusionary rule would not apply to evidence seized by officers acting in objectively reasonable reliance upon a statute authorizing warrantless administrative searches; after the search and seizure in that case the statute was held unconstitutional as violating the Fourth Amendment.

¶ 83. *Krull* sweeps broadly and authorizes the use of evidence seized in a whole class of unconstitutional searches, that is, those conducted pursuant to a statutory enactment which is later declared unconstitutional. The *Krull* rule means that an appellate court need not review each case falling within the class. In contrast, the *Leon* case deals with a single unconstitutional judicial authorization of a particular search under particular circumstances; an appellate court reviews each warrant to determine whether that case falls within the *Leon* "good faith" exception to the exclusionary rule. Because of the sweeping reach of *Krull*, commentators and courts have found the *Krull* rule more problematic than the *Leon* rule.

¶ 84. Professor LaFave, for example, views the *Krull* rule as even more objectionable than *Leon*.[12]

¶ 85. Justice Sandra Day O'Connor, who agreed with *Leon*, dissented along with three of her colleagues in *Krull* (a 5–4 decision). The Illinois Supreme Court also rejected the *Krull* rule. That court reasoned that the *Krull* rule provides a grace period in which constitutional rights may be violated with impunity; the grace period can last for several years and can affect large numbers of people. The Illinois Supreme Court

[11] 1 Wayne R. LaFave, *Search and Seizure* § 1.3(h) at 97 (3d ed. 1996).

[12] 1 Wayne R. LaFave, *Search and Seizure* § 1.3(h) at 98 (3d ed. 1996).

concluded that "this is simply too high a price for our citizens to pay."[13]

¶ 86. Neither *Krull* nor *Leon* confronts the fact situation presented in this case: an officer seizes evidence; an unconstitutional decision of a court authorizes the search. The majority opinion thus extends an exception to the exclusionary rule beyond *Krull* and *Leon*. I would not do so.

¶ 87. This court should be more cautious in adopting exceptions to the exclusionary rule in light of the history of the exclusionary rule in this state. The Wisconsin Supreme Court was one of the first in the nation to adopt the exclusionary rule.[14] *State v. Hoyer*, 180 Wis. 407, 193 N.W. 89 (1923), was decided almost 40 years before *Mapp v. Ohio*, 367 U.S. 643 (1961), obliged this court to adopt the exclusionary rule. This early adoption of the exclusionary rule demonstrates this state's commitment to protecting the privacy of its citizens which this court should not rush to diminish.[15]

¶ 88. Although the majority opinion asserts that its "decision will affect only a narrow band of cases arising between *State v. Richards* and *Richards [v. Wisconsin]*," majority op. at ¶ 45, I fear that the major-

---

[13] *People v. Wright*, 697 N.E.2d 693, 697 (Ill. 1998), quoting *People v. Krueger* 675 N.E.2d 604 (Ill. 1996).

[14] *See State v. Taylor*, 60 Wis. 2d 506, 523, 210 N.W.2d 873 (1973)(noting the court's early adoption of the exclusionary rule).

[15] For a more developed discussion of *State v. Hoyer* and its implication for this court's adoption of the good faith exception to the exclusionary rule, see Justice Prosser's concurring opinion in *State v. Orta*, 2000 WI 4, 231 Wis. 2d 782, 604 N.W.2d 543, of even date. I join that part of Justice Prosser's concurrence in *Orta* relating to *Hoyer* and the good faith exception to the exclusionary rule.

ity opinion has broader implications. The majority opinion applies to any published decision of the court of appeals or this court authorizing a search when the decision is later declared unconstitutional. The majority opinion rendered today also removes much of the incentive for an accused to challenge a search or seizure that is authorized by a published decision of this court or the court of appeals. The accused would not get an effective remedy in the very case in which he or she successfully challenged a decision, because the evidence seized would be admissible under the exception adopted by the majority opinion today.

¶ 89. What does this majority opinion mean for the future of the exclusionary rule in Wisconsin? What is the status of the good faith exception in Wisconsin? Who knows? The majority isn't telling.[16]

¶ 90. For the reasons stated, I do not join the majority opinion's extension of the *Krull* rule to the present case. The majority opinion errs in refusing to suppress evidence seized by law enforcement officers who failed to comply with the constitutionally based rule of announcement.

¶ 91. I am authorized to state that JUSTICE ANN WALSH BRADLEY joins this dissent and JUSTICE DAVID T. PROSSER joins Part I of this dissent.

¶ 92. DAVID T. PROSSER, J. *(dissenting)*. The liberties secured by the United States Constitution must not be compromised in society's struggle to com-

---

[16] I raise the issue of what constitutes reliance in objective good faith on a pronouncement of this court in my dissent in *State v. Orta*, 2000 WI 4, 231 Wis. 2d 782, 604 N.W.2d 543, of even date.

764

bat illegal drugs. The "horrors of drug trafficking" are real and substantial, but "under our Constitution only measures consistent with the Fourth Amendment may be employed by government to cure this evil."[1]

¶ 93. Search warrants are an essential safeguard against government overreaching. They protect privacy in persons, houses, papers, and effects by requiring a neutral magistrate to make an independent determination of probable cause before authorizing a government search. Thus, the integrity of search warrants is vital, and it must not be impaired by government zeal to suppress drugs. Because this decision seriously undermines the foundation for search warrants in drug cases, I respectfully dissent.

I

¶ 94. The State of Wisconsin petitioned the court to take this case to review several issues. The first issue was stated as follows: "In reviewing a search warrant affidavit, may the judge infer that evidence of drug dealing will be found at the suspect's residence when the affidavit provides facts identifying the suspect's residence and provides probable cause that the suspect is a drug dealer?"[2] The State's brief sets forth an affirmative answer to this question with two arguments. First, the State contends that a judge may rely on the judge's personal experience to infer that evidence of drug dealing will be found at a suspected drug dealer's residence. Second, it argues that for drug dealers, evidence is likely to be found where dealers live. Hence, probable cause that a person is a drug dealer

---

[1] *Illinois v. Gates*, 462 U.S. 213, 290 (1983) (Brennan, J., dissenting, quoted with approval in the majority opinion of Justice Rehnquist at 241).

[2] Petition for Review and Appendix at 1.

provides probable cause to search the person's residence.

¶ 95. In justifying the issuance of the search warrant for Lance Ward's residence, Circuit Judge James Welker relied heavily on his own extensive experience in dealing with drug cases. The majority opinion dismisses his analysis by stating that: "The subjective experiences of the magistrate are not part of the probable cause determination." Majority op. at ¶ 26. This conclusion is consistent with prior decisions. In *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991), the court said: "In reviewing whether there was probable cause for the issuance of a search warrant, we are confined to the record that was before the warrant-issuing judge."[3] Allowing the personal experience of the magistrate to factor into the determination of whether probable cause exists to issue a search warrant would mean that probable cause was subjective, varying from magistrate to magistrate. A magistrate's personal experience would be difficult for an appellate court to review, and subjective determinations of probable cause would destroy uniformity in the law.

¶ 96. On the other hand, by dismissing the State's first argument, the majority is forced to embrace a proposition allegedly grounded in universal experience: that suspected drug dealers are so likely to keep drugs in their homes that the government will always have probable cause to search their residences, absent evidence that a specific dealer keeps drugs elsewhere. This is precisely the position advocated by the

[3] The court cited *State v. DeSmidt*, 155 Wis. 2d 119, 132, 454 N.W.2d 780 (1990), and *Bast v. State*, 87 Wis. 2d 689, 692, 275 N.W.2d 682 (1979). See also *State v. Benoit*, 83 Wis. 2d 389, 395, 265 N.W.2d 298 (1978).

State,[4] and, for all practical purposes, it is the position adopted by this court.

¶ 97. In Section I of her dissenting opinion, Chief Justice Abrahamson admirably outlines her objection to the majority's ruling. I join in Section I of her dissent

---

[4] The following colloquy occurred during the oral argument of this case:

Chief Justice: Is your position, counsel. . .is the State's position that every time you have a drug dealer, that is, a charge of a drug dealer in the affidavit, that the inference can be made that there will be drugs in the home, in the residence, and therefore the search warrant can apply to the home?

Assistant Attorney General: . . .[I]f that's justified by experience, yes.

Chief Justice: Well, whose experience?

Assistant Attorney General: I think it could be the judge as well as the. . .it could be the judge or the police officer. If it's the police officer, he puts it in there and it's for the judge to review. If it's the judge it's going to have to be—the State's position is that's a legitimate consideration for the judge to use when drawing the inference based on the information that's in there.

Chief Justice: Well, suppose we have a brand new judge on the bench in Rock County and [he or she] comes from the civil practice and you got this kind of a warrant. . . . [A]nd the police searched the home. [I]s it the State's position then that that search had no probable cause?

Assistant Attorney General: No, I think it would have to be—in Fourth Amendment cases there's an objective standard applied.

Chief Justice: Well, that goes back to my question. . . .[I]s it your position that as an objective standard in all cases in which the affidavit says it's a drug dealer, you can search the home? It doesn't matter what the cop says in the affidavit or what the judge's past experience is because it's objective.

Assistant Attorney General: Well, yes, and that is the position that's been taken in several cases.

Chief Justice: That is. . .as a matter of law, there's probable cause to search the home. Is that your position?

Assistant Attorney General: Yes.

and commend as well the scholarly analysis of the court of appeals.[5]

## II

¶ 98. Our law strongly favors searches conducted pursuant to a warrant. *State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994). The warrant process not only places a neutral and detached magistrate between government intrusion and the people but also obligates government officials to demonstrate to that magistrate a substantial basis for their proposed intrusive conduct. In this process, neutral oversight is pointless if the magistrate merely rubberstamps an affidavit based on generalizations instead of particulars.

¶ 99. In *Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Supreme Court spelled out the role of the neutral magistrate in the warrant process:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The magistrate is entitled to consider the totality of the circumstances before the court in making the probable cause determination of whether there are "sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in

---

[5] *State v. Ward*, 222 Wis. 2d 311, 319–333, 588 N.W.2d 645 (1998).

the place to be searched." *State v. Stark*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978).[6]

¶ 100. There is no dispute that a reviewing court will show great deference to the magistrate's decision. *Gates*, 462 U.S. at 236; *Spinelli v. United States*, 393 U.S. 410, 419 (1969). However, deference to the magistrate "is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). A reviewing court will not defer to a warrant based on an affidavit that does not provide a substantial basis for determining the existence of probable cause. *Id.* at 915.

¶ 101. A magistrate considers many factors in passing upon an application for a warrant. The warrant itself must describe with particularity the place to be searched and the things to be seized.[7] Hence, the magistrate must review the particularity and find probable cause that the things sought are linked to criminal activity and will be found in the place to be searched.[8] These factors may raise questions of scope.[9] The totality of the circumstances in determining probable cause includes the "veracity" or reliability of persons supplying information, the "basis of knowl-

---

[6] This language is quoted in *State v. DeSmidt*, 155 Wis. 2d 119, 131–32, 454 N.W.2d 780 (1990), and *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991).

[7] Fourth Amendment of the United States Constitution; Article I, § 11 of the Wisconsin Constitution; Wis. Stat. § 968.12(1), (2).

[8] *State v. Benoit*, 83 Wis. 2d 389, 394–95, 265 N.W.2d 298 (1978).

[9] *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987).

edge" of persons supplying information,[10] and the freshness or staleness of the information provided.[11]

¶ 102. The "particularity and probable cause requirements" are the only protections a person has against a general search. *State v. DeSmidt*, 155 Wis. 2d 119, 130, 454 N.W.2d 780 (1990). Arguably, these requirements may be relaxed somewhat if the situation is truly urgent. For instance, in *Franks v. Delaware*, 438 U.S. 154, 169 (1978), the Supreme Court observed that the "pre-search proceeding will frequently be marked by haste, because of the understandable desire to act before the evidence disappears." In these circumstances, the magistrate may not have time to conduct an independent examination of the affiant and other witnesses. In the normal situation, however, the Court has found it reasonable to require the officer applying for a warrant to exercise reasonable professional judgment in preparing the affidavit. *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986).

¶ 103. The affidavit in this case raises several issues. The full text of the affidavit is printed as an appendix to this dissent.

## A

¶ 104. The affidavit supporting a warrant should establish probable cause that the warrant describes the correct place to be searched. This affidavit provides probable cause that " 'Lance' who lives on Royce" was supplying marijuana to Derrell Vance. It also shows that Lance Ward owned property at 1663 Royce. It does not clearly establish, however, that the " 'Lance' who

---

[10] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[11] *State v. Ehnert*, 160 Wis. 2d 464, 469–70, 466 N.W.2d 237 (1991).

lives on Royce" and Lance Ward who owns property on Royce are one and the same person. Derrell Vance did not provide the last name or the street address of his supplier. He did not indicate whether "Lance" owned property on Royce, as opposed to renting property or staying with friends. The affidavit provides no basis for a reviewing court to determine the number of houses on Royce or whether there were other "Lances" living on Royce. Conversely, it does not show whether police diligently examined tax rolls, city directories, or other documentary evidence to ensure that Lance Ward was the only known "Lance" on Royce. If there were other "Lances" living on Royce, it would be a mockery of the Fourth Amendment to suggest that all their homes could be searched, and it would be deceitful not to disclose the existence of other "Lances" to the court. The possibility of other "Lances" could have been systematically eliminated or at least reduced but was not.

¶ 105. As a result, the critical information suggesting that the " 'Lance' who lives on Royce" was in fact Lance Ward, was the following paragraph in the affidavit:

> 2.) Your affiant further states he is familiar with the confidential files kept by the Beloit Police Department Special Operations Bureau and as a result knows that the Beloit Police Department has received four pieces of intelligence indicating that Lance Ward is a drug dealer.

¶ 106. The majority opinion wisely avoids any reliance on this paragraph in its discussion of the affidavit. The affidavit provides no evidence that the information in the paragraph is worthy of belief. The record does not indicate whether the allegations against Ward are anonymous or come from specific

771

individuals. It does not indicate the number of sources. It does not indicate that the sources are "reliable." It does not indicate their "basis of knowledge" or whether the pieces of intelligence are recent. In sum, the affidavit does not incorporate anything to demonstrate that the four pieces of intelligence represent credible evidence. This means that the affidavit did not show the magistrate that the police had the correct "Lance" and thus the correct house.

## B

¶ 107. The Beloit police requested a premises warrant to search not only Lance Ward's house but also his "curtilage, outbuildings [a one car detached garage], and any and all vehicles pertaining to 1663 Royce on or near said premises." The resulting warrant authorized a search of Ward's body as well as the premises at 1663 Royce.

¶ 108. This court has approved premises warrants. They are discussed extensively in *State v. Andrews*, 201 Wis. 2d 383, 549 N.W.2d 210 (1996). In *Andrews*, the court held "that police can search all items found on the premises that are plausible repositories for objects named in the search warrant, except those worn by or in the physical possession of persons whose search is not authorized by the warrant." 201 Wis. 2d at 403. In *State v. O'Brien*, 223 Wis. 2d 303, 588 N.W.2d 8 (1999), we approved the search of a vehicle registered to the defendant that was located 200 feet away from the defendant's home, thereby enlarging the "premises." Here, the warrant authorized a search of virtually everything related to 1663 Royce. Considering the broad scope of the warrant, the affidavit supporting the warrant must have established some direct linkage between the things to be seized and the

expansive premises to be searched. Otherwise, the warrant represented little more than a license for the government to ransack Ward's property in the hope of uncovering evidence of crime. *See Frank v. Maryland*, 359 U.S. 360, 365 (1959).

## C

¶ 109. Ward contends that the affidavit is "insufficient because it contains no statement creating a nexus between the items sought and Ward's residence on Royce." Majority op. at ¶ 27. The majority responds with a blizzard of inferences:

1) An informant alleges that Derrell Vance "sells pounds of marijuana." Vance is apprehended with approximately 7.3 pounds of marijuana. The court infers from the evidence that Vance is "a substantial dealer." *Id.* at ¶ 29.

2) "Vance identifies his supplier as Lance who lives on Royce. Vance supplies no other address or location. . . .[I]t can be inferred from this information that Vance obtained the marijuana from Lance *where Lance lived, on Royce*." (emphasis added) *Id.*

3) "Given the large quantity of drugs involved" and the allegation that "Lance" supplied Derrell Vance, the court infers that Lance "is an even bigger fish" than Vance and that there is a substantial basis "that illegal items will be found at the home of Lance Ward on Royce. The obvious and reasonable inference is that Lance dealt drugs from his home." *Id.* at ¶ 30.

¶ 110. The court should not infer that Derrell Vance "obtained the marijuana from Lance where Lance lived" because that inference is speculative. Vance was not quoted in the affidavit. He was paraphrased. He never spoke directly to the affiant. Whatever he said about Royce may have come in

response to a question about where Lance could be found.

¶ 111. At the time the search warrant was sought, Derrell Vance was in custody and cooperating with the police. There is no explanation why authorities did not obtain answers to simple questions like: "If you don't know Lance's last name, can you describe what he looks like, his age, and where he lives? Have you ever been to his house? Did you see any drugs in his house? When you purchased drugs from Lance, did you take possession of the drugs at the house? If you didn't see drugs in the house or pick up drugs at the house, where did you take possession of the drugs? Did Lance ever indicate where he keeps his drugs? Do you know of anyone else who has bought drugs from Lance at his house or can place drugs in the house?"

¶ 112. If there were evidence in the affidavit that Derrell Vance had bought drugs at Lance's house, or seen drugs at Lance's house, or had good reason to believe that Lance kept drugs at his house, there would be little reason to question the sufficiency of the affidavit on this point. But the evidence is not there.

¶ 113. The Ward affidavit reveals that in Derrell Vance's case, a Crime Stopper claimed that Vance sold pounds of marijuana and that he or she "had seen marijuana in the house of Derrell Vance." Why is the same affidavit unable to assert point blank that Derrell Vance said he had seen marijuana in the house of Lance on Royce? The problem with the affidavit is not the reliability of what Vance said; the problem is the chasm left by what Vance did not say or what Vance told police that was omitted from the affidavit. Judges are not entitled to use their imaginations to fill in these gaps.

## D

¶ 114. The majority opinion insists that the court is "not suggesting that when there is sufficient evidence to identify an individual as a drug dealer. . .that there is sufficient evidence to search the suspect's home." Majority op. at ¶ 36. It attempts to distinguish this case from the blanket rule advocated by the State on the basis that Lance Ward was a "high volume" drug dealer. *Id.* at ¶ ¶ 30, 36. The distinction is not persuasive.

¶ 115. There was probable cause to believe that " 'Lance' who lives on Royce" was a wholesale supplier of marijuana, and that he was "a bigger fish" than Derrell Vance. However, these reasonable conclusions do not provide a substantial basis for an inference that Ward "dealt drugs from his home."

¶ 116. If we were to undertake a statistical sampling of drug dealers—large and small—and drug users, we might well find that majorities in each category keep drugs in their homes. Such information would not supply probable cause to search the homes of all the suspected drug dealers and drug users in the United States. More important, there is no evidence in this record that supports the proposition that a "large" drug dealer is more likely to keep drugs in the home than a small drug dealer. The affiant did not make such a claim.

## E

¶ 117. Distinguishing this case from the broad rule advocated by the State relieves the majority of the burden of addressing a troublesome passage in *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982):

775

> [T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime.

This passage is important because it was quoted with approval in *State v. Higginbotham*, 162 Wis. 2d at 995.

¶ 118. The majority asserts that "our examination of the facts leads to the conclusion that the information presented to the warrant-issuing judge was sufficient for a reasonable person to logically infer that evidence would be found at Ward's home." Majority op. at ¶ 27. It concludes that "[t]he obvious and reasonable inference is that Lance dealt drugs from his home." *Id.* at ¶ 30.

¶ 119. What the majority fails to explain is how Lance Ward's situation is different from the situation of other drug dealers, so that the inference it draws is derived from the particular facts in this record. The majority admits that the inference "is not the only inference that can be drawn, but it is certainly a reasonable one. The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one." *Id.*

¶ 120. Reasonable inferences were discussed recently in *Belich v. Szymaszek*, 224 Wis. 2d 419, 425, 592 N.W.2d 254 (Ct. App. 1999), in which the court said:

> An elementary principle is that an inferred fact is a logical, factual conclusion drawn from basic facts or historical evidence. It is the probability that certain consequences can and do follow from basic events or conditions as dictated by logic and human experience.

776

The court noted that a reasonable inference is a conclusion arrived at by a process of reasoning. The "conclusion must be a rational and logical deduction from facts admitted or established by the evidence when such facts are viewed in the light of common knowledge or common experience." *Id.*

¶ 121. In *Crowley v. Winans*, the Court of Appeals for the Seventh Circuit equated "permissive inference" with "permissive presumption," explaining that such an inference permits "the factfinder to infer the elemental fact from proof by the state of the basic fact, but does not require the factfinder to reach that conclusion and does not shift the burden to the defendant." 920 F.2d 454, 456 (7th Cir. 1990) (citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 157 (1979). A presumption thus complies with due process requirements if "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former." *Id.* (quoting *Ulster County*, 442 U.S. at 165).

¶ 122. The key phrase for me is "more likely than not." The conclusion that Lance Ward "dealt drugs from his home" was not "more likely than not" to flow from his probable status as a dealer if one relied solely on information in the record. The majority concedes that its inference is not the only inference that could be drawn. In fact, the shrewd circuit judge did not draw that inference until he first factored in his own experience.

## III ·

¶ 123. The affidavit in this case was deficient. It left too many unanswered questions. It did not establish probable cause. The affidavit was not presented to

the court in the throes of some desperate emergency. Darrell Vance, the informant, was in police custody, offering to cooperate. Lance Ward, the target, had been suspected as a marijuana dealer over a period of time. When the warrant was eventually executed, Ward was at home, unarmed, watching television. There is no explanation in the record why the police could not have taken the time to prepare a proper affidavit.

¶ 124. The affidavit printed in the appendix should not serve as a model to law enforcement in Wisconsin. Expecting to get a warrant on the basis of this affidavit is like expecting to catch a big fish without baiting the hook. The decision of the court of appeals should be affirmed.

¶ 125. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE ANN WALSH BRADLEY join this dissent.

## APPENDIX

### AFFIDAVIT FOR SEARCH WARRANT

Douglas Anderson, being first duly sworn, on oath says that on the 4th day of December, 1996, in Rock County, in and upon certain premises in the City of Beloit, in Rock County, occupied by Lance Ward, and more particularly described as follows: 1663 Royce is green with white trim, two story, single family dwelling. 1663 Royce is the fourth house south of Summitt on the east side of Royce. 1663 Royce has a one car detached garage in the northeast side of the lot. Further to include curtilage, outbuildings and any and all vehicles pertaining to 1663 Royce on or near said premises, there are now located and concealed certain things, to-wit:

Marijuana and other controlled substances, scales, packaging materials, drug paraphernalia, drug ledgers, address/phone records, indicia of occupancy, opened or unopened financial documents relating to drug proceeds, U.S. currency, and any and all other instrumentalities, substances or documents which are in violation of Possession of Controlled Substance With Intent to Deliver-THC, contrary to Section 961.41(1m)(h)1 of Wisconsin Statutes and prayed that a search warrant be issued to search said premises for said property.

The facts tending to establish the grounds for issuing a Search Warrant are as follows:

1.) On 11–27–96, your Affiant received a call from a Crime Stopper who stated that Derrell Vance sells pounds of marijuana. The Crime Stopper had seen marijuana in the house of Derrell Vance. On 11–29–96 a search warrant was executed and the following items were recovered:

3,311 grams of marijuana

$11,171.00 U.S.C.

.3 grams of crack cocaine

Lettermate digital scale

Postal scale

Rolling papers

Pipe

THC roaches

Indicia of occupancy for Derrell and Candy Vance

The Crime Stopper stated that Derrell Vance would order his marijuana and have it distributed in a day or two. Derrell Vance would re-order immediately

or within a two week span. Derrell Vance would distribute one to two pounds to each of his dealers.

On 11–30–96 a family member of Derrell Vance contacted your Affiant. This family member was told by Derrell Vance that "Lance" was his supplier of marijuana. Derrell Vance needed someone to make contact with "Lance" in order to get him out of jail.

On 12–2–96, Derrell Vance contacted SLANT. Inspector Kreitzmann of SLANT, told your Affiant that Derrell Vance wanted to make a deal to get out of jail. Derrell Vance told SLANT that his supplier was "Lance" who lives on Royce. These admissions to SLANT by Derrell Vance were prior to Derrell Vance's court initial appearance.

The City of Beloit tax rolls shows 1663 Royce as property owned (sic) Lance R. Ward.

2.) Your affiant further states he is familiar with the confidential files kept by the Beloit Police Department Special Operations Bureau and as a result knows that the Beloit Police Department has received four pieces of intelligence indicating that Lance Ward is a drug dealer.

3.) Your affiant has been a police officer for 14 years and has participated in approximately 185 drug raids. Affiant has been actively involved in the area of Special Weapons and Tactics since 1984. Affiant is a State of Wisconsin Certified Instructor in the area of arrest and control procedures, both receiving and providing training. Affiant is an Instructor in the area of Hostage Rescue and High Risk Warrant Service, both receiving and providing training. Based on affiant's training, experience and associations with others in those fields, he is aware that persons involved in many illegal activities, including drug related crimes often arm themselves with weapons, including firearms and

sometimes use those weapons against the police and others. These persons will also destroy or conceal evidence if given time. Affiant, based on the stated experience, training and association, is aware that a very important factor in controlling persons and in particular, during drug raids, is surprise and speed. Affiant is also aware that control reduces the likelihood of injury to all involved. Affiant is aware that announcement eliminates surprise and provides persons with a residence time to take actions that would require a reaction by officers. For these reasons affiant requests that a NO KNOCK search warrant be issued. Affiant, based on his training and experience with others in that field believes that where illegal drugs are sold by one person, they are purchased by others and are commonly carried on the persons of both. It is also true of locations where drug use takes place, persons commonly carry illegal drugs on their body.

Dated this 4th day of December, 1996.

WHEREFORE, the said Affiant prays that a Search Warrant be issued to search such premises for the said property, and to bring the property, if found, and the person(s) in whose possession the property is found, before the Circuit Court for Rock County, to be dealt with according to law.

[Signature of Douglas Anderson]

[Subscription/Date]