*97 N. PATRICK CROOKS, J.
¶ 107. (concurring). In the consolidated cases of Riley v. California and United States v. Wurie, the United States Supreme Court recently recognized that "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' "[1] By generally requiring a warrant before a cell phone search following an arrest, the Supreme Court unanimously took a definitive approach, which it stated in simple terms: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple — get a warrant."[2]
¶ 108. Our decision in State v. Carroll,[3] a cell phone case, is consistent with the United States Supreme Court's decision in Riley/Wurie. In Carroll, we held that an officer was not justified in searching through images stored on a suspect's cell phone absent a warrant.[4] We reasoned that the images stored on the cell phone were "not in immediate danger of disappearing before [the officer] could obtain a warrant."[5] Like Riley/Wurie, our decision in Carroll demonstrates a definitive approach, requiring a warrant to search the contents of a cell phone.
¶ 109. The holdings of the United States Supreme Court in the Riley/Wurie cases and of this court in Carroll lead me to the conclusion that, absent case- *98 specific exceptions, such as an emergency, a warrant is required for the search of a cell phone's location. Therefore, I cannot join the lead opinion. I write separately to express my concern with the broad pronouncements of the lead opinion, especially given that Fourth Amendment cell phone jurisprudence, cell phone technology, and related legislation are all rapidly evolving. However, for the reasons explained below, I would apply a good faith exception consistent with the rationale of State v. Eason[6] and would decline to apply the exclusionary rule here. I agree that the location evidence obtained from Subdiaz-Osorio's cell phone provider should not be suppressed. In addition, I agree that Subdiaz-Osorio did not unequivocally invoke his right to counsel. Therefore, I respectfully concur with the mandate of the lead opinion.
I.
¶ 110. The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[7]
*99 ¶ 111. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is reasonableness.' "[8] The United States Supreme Court has also "determined that '[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing,. . . reasonableness generally requires the obtaining of a judicial warrant.' "[9]
¶ 112. In general, law enforcement should be required to obtain a warrant to search the contents of a cell phone incident to arrest and to obtain location information from a cell phone provider.[10] In addressing the facts of the Wurie case, for example, the United States Supreme Court held that law enforcement was required to obtain a warrant to search a cell phone for information as to the location of the arrestee's apartment.[11] I see a definite connection between the location information obtained in Wurie and the location information obtained in this case. As the United States Supreme Court explained,
Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building. See United States v. Jones, 565 U.S. _, _ (2012) (Sotomayor, J., concurring) (slip op., at 3) ("GPS monitoring generates a precise, comprehensive record of a *100 person's public movements that reflects a wealth of detail about her familial, political, professional, religious and sexual associations.").[12]
The United States Supreme Court recognized that there is a balancing of interests required when determining whether there should be a definitive rule or some exceptions permitted:
Absent more precise guidance from the founding era, we generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton , 526 U.S. 295, 300 (1999).[13]
¶ 113. Therefore, I would hold that law enforcement should obtain a warrant before obtaining cell phone location information from providers.
¶ 114. I am persuaded that the definitive approach of requiring a warrant for cell phone searches and cell phone location data is appropriate. I recognize that before the Riley/Wurie decisions, other jurisdictions that have considered cases involving cell phone location data have come to differing conclusions concerning a warrant requirement.[14]
*101 ¶ 115. Furthermore, a general warrant requirement is preferable considering the rapid evolution of Fourth Amendment jurisprudence and related legislation in the area of cell phone and other location tracking technology.[15] Justice Alito recognized this very principle when he concurred in part and concurred in the judgment in Riley/Wurie, where he stated:
In light of these developments, it would be very unfortunate if privacy protection in the 21st century were left primarily to the federal courts using the blunt instrument of the Fourth Amendment. Legislatures, elected by the people, are in a better position than we *102 are to assess and respond to the changes that have already occurred and those that almost certainly will take place in the future.[16]
¶ 116. It is noteworthy that the Wisconsin Legislature has quite recently enacted[17] Wis. Stat. § 968.373, which generally requires law enforcement to obtain a warrant before "track[ing] the location of a communications device."[18] This statute, however, provides an exception to the general warrant requirement if "[t]he customer or subscriber provides consent for the action" or if "[a]n emergency involving the danger of death or serious physical injury to any person exists and identifying or tracking the location of the communications device is relevant to preventing the death or injury or to mitigating the injury."[19] Furthermore, Wis. Stat. § 968.373(8)(b) provides guidance to cell phone providers faced with law enforcement requests for location data absent a warrant.[20] In the fast developing area of Fourth Amendment jurisprudence and emerging tech- *103 nology, I would generally require that law enforcement obtain a warrant to obtain cell phone location data.
¶ 117. There is no indication that law enforcement lacked the necessary time to obtain a warrant to access Subdiaz-Osorio's cell phone location through information disclosed by his cell phone provider. Furthermore, nothing suggests that a delay in obtaining a warrant would have hindered law enforcement efforts. Based on the record in this case, law enforcement could have and should have obtained a warrant in time to access the requested cell phone location data and apprehend the defendant.[21]
II
¶ 118. Despite my view that usually law enforcement must obtain a warrant before obtaining a cell phone location, I would not exclude the location evidence in this case even though law enforcement did not first obtain a warrant. However, I do not agree with the lead opinion's conclusion that the warrantless search was justified on the grounds of probable cause and exigent circumstances. Instead, I would apply a good faith exception in this case to conclude that Subdiaz-Osorio's Fourth Amendment rights were not violated.
¶ 119. As the United States Court of Appeals for the Fifth Circuit stated:
[W]e now hold that evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized. We do so because the exclusionary rule exists to deter willful or flagrant actions by *104 police, not reasonable, good-faith ones. Where the reason for the rule ceases, its application must cease also.[22]
¶ 120. The United States Supreme Court in United States v. Leon[23] recognized the good faith exception to the exclusionary rule in the context of a search based on a subsequently invalidated warrant. However, as a treatise writer has recognized, Leon's sweeping language supports the extension of the good faith exception beyond the warrant situation to non-warrant cases where a police officer's conduct is objectively reasonable:
Although the holding in both Sheppard and Leon is limited to with-warrant cases, the possibility that these decisions will serve as stepping stones to a more comprehensive good faith exception to the Fourth Amendment exclusionary rule cannot be discounted. Certainly the author of those two decisions, Justice White, was prepared to go farther, as he clearly indicated prior to and contemporaneously with the rulings in those two cases, and some current members of the Court may be equally prepared to take such a step. If they are, much of the reasoning in Leon will offer support for such an extension of that case beyond the with-warrant situation. Particularly noteworthy is the Leon majority's broad assertion that whenever the police officer's conduct was objectively reasonable the deterrence function of the exclusionary rule is not served and that "when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."[24]
*105 ¶ 121. The good faith exception does not contravene the purpose of the exclusionary rule. "When there has been an unlawful search, a common judicial remedy for the constitutional error is exclusion."[25] Specifically, "[t]he exclusionary rule bars evidence obtained in an illegal search and seizure from a criminal proceeding against the victim of the constitutional violation."[26] That the exclusionary rule is a judicially created remedy, not a right, is significant; "its application is restricted to cases where its remedial objectives will best be served."[27]
¶ 122. Thus, a court considering whether to apply the exclusionary rule must bear in mind the primary purpose of the rule: deterring police misconduct.[28] "[MJarginal deterrence is not enough to justify exclusion; 'the benefits of deterrence must outweigh the costs.' "[29] In employing this type of cost/benefit analysis to the facts of a particular case, a court should recognize the "substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights . . . ."[30] The social costs of deterrence are particu *106 larly high where "law enforcement officers have acted in objective good faith or their transgressions have been minor" because "the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."[31]
¶ 123. The exclusionary rule is based on a desire to deter law enforcement from violating the constitutional right of a citizen to be free from illegal searches and seizures. "Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."[32] On that basis, we have refused to apply the exclusionary rule wherpe it would otherwise apply where officers proceeded consistent with "law that was controlling at the time of the search,"[33] and where police reasonably relied on a subsequently invalidated search warrant.[34] We stated specifically, "[T]he laudable purpose of the exclusionary rule — deterring police from making illegal searches and seizures — would not be furthered by applying the exclusionary rule."[35]
¶ 124. That is a guiding principle in the application of the exclusionary rule. We have, consistent with the United States Supreme Court, stressed that "just because a Fourth Amendment violation has occurred does not mean the exclusionary rule applies. . . . The application of the exclusionary rule should focus on its efficacy in deterring future Fourth Amendment violations. Moreover. . . 'the benefits of deterrence must *107 outweigh the costs.' "[36] Citing to Eason, Dearborn made clear that in those circumstances where "the exclusionary rule cannot deter objectively reasonable law enforcement activity, ... it should not apply . . . ,"[37] Many courts have endorsed this approach and have declined to apply the exclusionary rule in a rigid manner where law enforcement acted reasonably.[38]
¶ 125. I agree with that approach, and, based on the record here, this case falls within the category of cases to which the exclusionary rule should not apply because no deterrent purpose would be served by requiring the exclusion of the cell phone location evidence at issue.
¶ 126. Here police were investigating a murder, and, after pursuing other investigative leads, police contacted the Wisconsin Department of Justice, Division of Criminal Investigation (DCI), and asked DCI to request location information from Subdiaz-Osorio's cell phone provider. Proceeding according to the requirements of the cell phone provider, and pursuant to the terms of its user agreement, DCI filled out and submitted to the cell phone provider a "Mandatory Information for Exigent Circumstances Requests" form. There is no evidence or allegation of police misconduct in this case.
*108 ¶ 127. What occurred here is certainly similar to what we required in structuring the good faith exception:
We hold that where police officers act in objectively reasonable reliance upon the warrant, which had been issued by a detached and neutral magistrate, a good faith exception to the exclusionary rule applies. We further hold that in order for a good faith exception to apply, the burden is upon the State to show that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney. We also hold that this process is required by Article I, Section 11 of the Wisconsin Constitution, in addition to those protections afforded by the good faith exception as recognized by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984).[39]
Parallel to our reasoning in Eason, there was a "significant investigation" underway into the murder of Subdiaz-Osorio's brother, including multiple interviews with witnesses and a search warrant executed at his home. Furthermore, as part of the investigation, law enforcement consulted with the Department of Justice, an outside entity certainly "trained and knowledgeable" in these matters, whose staff then requested the cell phone location data. These steps were of a similar nature to the steps outlined in Eason.
¶ 128. Searches involving cell phone data represent a rapidly evolving area of law where it is appropriate to recognize law enfo8rcement's good faith efforts to conduct investigations consistent with constitutional restrictions. There is no allegation that there was *109 clearly established law that police disregarded in the course of the investigation in this case. The actions of the police here show that the officers were acting in good faith, and, therefore, a good faith excep8tion to the warrant requirement is appropriate here.
¶ 129. For the reasons stated, I respectfully concur with the mandate of the lead opinion but write separately.

 Riley v. California, Nos. 13-132, 13-212, slip op., at *20 (U.S. June 25, 2014) (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)). I will refer to the two consolidated cases as Riley/Wurie.

 Id.

 State v. Carroll, 2010 WI 8, 322 Wis. 2d 299, 778 N.W.2d 1.

 See id., ¶ 33.

 Id.

 State v. Eason, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625.

 U.S. Const, amend IV In similar language, the Wisconsin Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
Wis. Const, art. I, § 11.

 Riley v. California, Nos. 13-132, 13-212, slip op. at *6 (U.S. June 25, 2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)).

 Id. (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995)).

 See id.; see also Carroll, 322 Wis. 2d 299.

 Riley v. California, Nos. 13-132, 13-212, slip op. at *5, 9 (U.S. June 25, 2014).

 Id. at *19.

 Id. at *9.

 See Adam Koppel, Note, Warranting A Warrant: Fourth Amendment Concerns Raised by Law Enforcement's Warrant-less Use of GPS and Cellular Phone Tracking, 64 U. Miami L. Rev. 1061, 1079 (2010). Compare In re U.S. for an Order Authorizing the Release of Prospective Cell Site Info., 407 F. Supp. 2d 134, 135 (D.D.C. 2006) (holding that the government must demonstrate probable cause in order to obtain cell site *101 tracking information due to Fourth Amendment privacy concerns), and In re Application of the U.S. for an Order (1) Authorizing the Use of a Pen Register & a Trap & Trace Device, 396 F. Supp. 2d 294, 295 (E.D.N.Y. 2005) (holding same), and In re Application of U.S. for an Order Authorizing Installation & Use of a Pen Register & a Caller Identification Sys. on Tel. Nos. (Sealed), 402 F. Supp. 2d 597, 598 (D. Md. 2005) (holding same), and In re Application for Pen Register & Trap Trace Device with Cell Site Location Auth., 396 F. Supp. 2d 747, 757 (S.D. Tex. 2005) (holding same), with In re U.S. for an Order, 433 F. Supp. 2d 804, 806 (S.D. Tex. 2006) (holding that probable cause was not required for cell site location information), and In re Application of U.S. For an Order, 411F. Supp. 2d 678, 680 (W.D. La. 2006) (holding same), and In re Application of U.S. for an Order for Prospective Cell Site Location Info, on a Certain Cellular Tel., 460 F. Supp. 2d 448, 462 (S.D.N.Y. 2006) (holding same), and In re Application of U.S. for an Order for Disclosure of Telecomms. Records & Authorizing the Use of a Pen Register & Trap & Trace, 405 F. Supp. 2d 435, 450 (S.D.N.Y. 2005) (holding same).

 In addition to Riley, the United States Supreme Court has also recently considered questions arising under the Fourth Amendment as they relate to location tracking technology. United States v. Jones, 565 U.S. _, 132 S. Ct. 945 (2012) (holding that a GPS device placed on an automobile to record the vehicle's location constituted a search under the Fourth Amendment).

 Riley v. California, Nos. 13-132, 13-212, slip op. at *22 (U.S. June 25, 2014).

 At the time the police obtained the location information at issue here, our case law was not clear as to the need for a warrant, nor were the statutes clear as to the procedures necessary to obtain a warrant, as those procedures are spelled out in the recently enacted provision (Wis. Stat. § 968.373(2)). See Dissent, ¶ _n.32; State v. Tate, 2014 WI 89, ¶ _n.33, 357 Wis. 2d 172, 849 N.W.2d 798 (Abrahamson, C.J., dissenting).

 Wis. Stat. §968.373(2) (2011-12) (Effective April 25, 2014).

 Wis. Stat. § 968.373(8)(a).

 Wis. Stat. § 968.373(8)(b) (instructing providers to disclose information to law enforcement in situations where customers have provided consent or when the provider has a good faith belief that such information is necessary to prevent death or serious injury).

 I agree with Chief Justice Abrahamson's dissent that there was sufficient time and information for the police to get a warrant.

 United States v. Williams, 622 F.2d 830, 840 (5th Cir. 1980).

 United States v. Leon, 468 U.S. 897, 907-08 (1984).

 1 Wayne R. LaFave, Search and Seizure § 1.3(f), at 128 (5th ed. 2012) (citations omitted). See also Wesley MacNeil *105 Oliver, Toward A Better Categorical Balance of the Costs and Benefits of the Exclusionary Rule, 9 Buff. Crim. L. Rev. 201, 270-71 (2005) (advocating a broader application of the good faith exception to cases involving serious crimes wherein the police officers involved reasonably believed probable cause existed for the search or seizure)

 State v. Dearborn, 2010 WI 84, ¶ 15, 327 Wis. 2d 252, 786 N.W.2d 97.

 State v. Ward, 2000 WI 3, ¶ 46, 231 Wis. 2d 723, 604 N.W.2d 517 (citing Illinois v. Krull, 480 U.S. 340, 347 (1987)).

 Dearborn, 327 Wis. 2d 252, ¶ 35 (citing Herring v. United States, 555 U.S. 135, 129 S.Ct 695, 700 (2009)).

 Id., ¶ 41 (citing Krull, 480 U.S. at 347).

 Id., ¶ 35 (citing Herring, 129 S.Ct at 700).

 Id. at 907.

 Id. at 907-908.

 State v. Gums, 69 Wis. 2d 513, 517,230 N.W.2d 813 (1975) (quoting Michigan v. Tucker, 417 U.S. 433, 447) (1979).

 State v. Ward, 2000 WI 3, ¶ 3, 231 Wis. 2d 723, 604 N.W.2d 517.

 Eason, 245 Wis. 2d 206, ¶ 2.

 Id.

 Dearborn, 327 Wis. 2d 252, ¶ 35 (citations omitted) (citing Herring v. United States, 555 U.S. 135, 129 S.Ct 695, 700 (2009)).

 Id., ¶ 37.

 See State v. Coats, 797 E2d 693, 696 (Ariz. Ct. App. 1990) (discussing Ariz. Rev. Stat. § 13-3925, Arizona's statutory good-faith exception); Toland v. State, 688 S.W.2d 718 (Ark. 1985); Matter of M.R.D., 482 N.E.2d 306, 310 (Ind. Ct. App. 1985); State v. Sweeney, 701 S.W.2d 420, 426 (Mo. 1985); State v. Welch, 342 S.E.2d 789, 795 (N.C. 1986); State v. Gronlund, 356 N.W.2d 144, 146-47 (N.D. 1984); McCary v. Commonwealth, 321 S.E.2d 637, 644 (Va. 1984).

 Eason, 245 Wis. 2d 206, ¶ 74.