COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1369-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF3749

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMON W. WASHINGTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN and MARK A. SANDERS, Judges. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Jamon W. Washington appeals from a judgment of conviction for first-degree intentional homicide and an order of the trial court denying Washington's postconviction motion.[1]   For the reasons set forth below, we affirm.

**BACKGROUND**

¶2    On August 14, 2019, police officers found Maurice Grimes in the driver's seat of a parked vehicle with a single gunshot wound to his head.  Grimes was pronounced dead at the scene.  Surveillance video recovered during the investigation showed a dark-colored SUV park in the vicinity at the time of the shooting.  A male then exits the SUV, enters Grimes' vehicle, a flash of light believed to be a muzzle flash comes from inside Grimes' vehicle, the male exits Grimes' vehicle, and then he leaves in the SUV.

¶3    Further investigation uncovered a similar looking SUV—a dark-green GMC Yukon—listed on a social media account connected to Grimes. Police believed the Yukon to be the one in the surveillance video primarily based on the similarity of the color, the body shape, and an American flag sticker seen on the right rear bumper.  Police then connected the Yukon to Washington using parking tickets issued to the Yukon while parked outside Washington's residence. Police also connected the Yukon to Washington from a prior encounter that occurred on August 11, 2019, where Washington called police to his residence to investigate what Washington believed was an explosive placed on the back of the

---

[1] The Honorable Stephanie Rothstein presided over Washington's trial, imposed sentence, and entered the resulting judgment of conviction.  The Honorable Mark A. Sanders entered the order denying Washington's postconviction motion.  For ease of reference, we refer to each as the trial court.

Yukon. At that time, Washington represented the Yukon to be his vehicle. Officers surveilling Washington in the days following the shooting additionally noticed that the Yukon was parked outside Washington's residence.

¶4      Police also discovered during the investigation that on August 8, 2019, just days before Grimes' death, Washington reported to police that someone burglarized his residence by taking money, firearms, and a Playstation gaming console and controllers. Washington further indicated at the time that he reported the burglary that he believed Grimes was a culprit. He indicated that Grimes had been staying with him, and around the time that Grimes stopped staying with him, Washington noticed the missing items.

¶5      On August 18, 2019, Washington was stopped for a traffic violation and arrested,[2] and Washington was later charged with first-degree intentional homicide. A subsequent search of the Yukon on August 19, 2019, uncovered a garbage bag of blood-stained clothing consistent with the clothing worn by the male in the surveillance video. DNA analysis later conducted on the clothing positively identified the blood as Grimes' blood and identified Washington as the primary contributor of DNA found on the inside and collars of the clothing.

¶6      Police further spoke with Washington's landlord during the investigation. Washington's landlord indicated that he followed up with Washington about Washington's burglary complaint, and at that time, Washington

---

[2] Washington was driving a Chrysler at the time of the stop. Washington alerted police to the presence of firearms in the vehicle, and a search of the Chrysler at the time of the traffic stop uncovered several firearms, including assault rifles, which were sitting on the front and back seats of the vehicle. No evidence connected to the shooting was uncovered during the search of the Chrysler at the time of Washington's stop and arrest.

told him that the person he suspected of the burglary was recently found dead. When the landlord expressed concern to Washington that Washington might become a suspect, Washington indicated to his landlord that he was out of town attending his father's funeral in Ohio at the time of the shooting. Police, however, located Washington's father alive and spoke with Washington's father.

¶7     Washington filed motions challenging his stop and arrest and the search of the Yukon. He argued that the officers lacked reasonable suspicion to stop him and lacked probable cause to arrest him without a warrant, and he also argued that the search warrant for the Yukon failed to establish probable cause to search.[3] The trial court held a hearing on Washington's motions. The detective who prepared the search warrant and the officers involved in Washington's stop and arrest testified. The trial court denied both motions, and the case proceeded to a jury trial.

¶8     Following a five-day trial at which the State presented several witnesses and numerous exhibits, the jury found Washington guilty, and Washington was given a life sentence but made eligible for extended supervision after 40 years.

¶9     Washington filed a motion for a new trial and raised four main arguments: (1) he challenged the trial court's decisions denying his motions to suppress; (2) he argued that the State's evidence was insufficient because it required pyramiding inferences; (3) he maintained that the real controversy was not tried because the jury was erroneously instructed on the use of circumstantial

---

[3] Washington additionally argued that the detective who prepared the affidavit made false statements. Washington has not pursued this line of argument on appeal.

4

evidence; and (4) he indicated that he had newly discovered evidence in the form of testimony from a defense witness who he argued was prevented by the State from appearing at trial as a result of an altercation with Grimes' family in the hallway at the courthouse.

¶10     The trial court denied the motion.  In its written decision, the trial court rejected Washington's argument challenging the prior decisions denying Washington's motions to suppress saying that "homicide investigators compiled an ample body of evidence, which met the probable cause standard" and "[b]y August 18, 2019, the likelihood of the defendant's involvement in the homicide had become more than a mere possibility."  The trial court construed Washington's second argument as an argument challenging the sufficiency of the evidence and denied Washington's argument, stating that "[t]he evidence presented during the defendant's trial overwhelmingly linked him to the homicide of Maurice Grimes."  The trial court next rejected Washington's argument as to the jury instruction on circumstantial evidence, noting that Washington failed to object to the instruction and the instruction was a correct statement of the law. The trial court finally rejected Washington's argument related to newly discovered evidence primarily because the defense witness "ha[d] no independent knowledge about who killed Grimes" and her testimony "would have done little to assist the defense."  The trial court further recognized that the existing record did not reflect that the State interfered with the witness's appearance as a result of an altercation in the hallway with Grimes' family.

¶11     Washington now appeals.  Additional relevant facts will be noted below as necessary.

**DISCUSSION**

¶12      Washington raises four main arguments on appeal.  As the trial court and the State has done, we frame the issues as follows: (1) whether Washington's Fourth Amendment rights were violated by his arrest and the search of the Yukon; (2) whether the State presented sufficient evidence at trial to support Washington's conviction for first-degree intentional homicide; (3) did the trial court err in its instruction to the jury on circumstantial evidence; and (4) whether Washington is entitled to a hearing on his claim of newly discovered evidence.  We address each argument in turn.

**I.      Washington's Stop and Arrest and Search of the Yukon**

¶13      On appeal, Washington first argues that the officers lacked probable cause to arrest him and the search warrant failed to establish probable cause to search the Yukon.  Thus, he argues that the trial court erroneously denied his motions to suppress.

¶14      We review a trial court's denial of a motion to suppress evidence using a two-step standard.  *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552.  We will uphold the trial court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles.  *Id.*

*A.  Probable Cause to Arrest Washington*

¶15      Washington argues that no probable cause existed to target him for Grimes' shooting.  He contends that all police had to support probable cause prior to Washington's arrest was the belief that the Yukon was the same SUV in the surveillance video of the shooting and, further, that the information police used to

connect the Yukon to the SUV in the surveillance video was "too vague" both to identify the Yukon as the SUV in the surveillance video and to support Washington as "an investigatory target." We are not persuaded that the information used by the police to identify the Yukon as the SUV in the surveillance video or to identify Washington as a suspect was too vague to support probable cause.

¶16　Rather, we are persuaded that Washington's arrest can be upheld for two reasons. First, Washington was lawfully arrested following a stop for a traffic violation. Second, Washington was lawfully arrested because police had probable cause to believe Washington was responsible for Grimes' murder.

¶17　At the multi-day hearing on Washington's motions to suppress, officers testified that they stopped and subsequently arrested Washington after observing that Washington failed to stop at a stop sign. At the time of the stop, Washington alerted officers to the presence of firearms in his vehicle, and the subsequent search of the vehicle confirmed the presence of assault-style rifles in the vehicle. While this was a basis for upholding Washington's stop and arrest below, Washington does not address this on appeal. We, therefore, consider any argument that Washington could raise to challenge this as a lawful basis for his stop and arrest to be conceded. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). Nevertheless, we also agree with the alternate finding that Washington was lawfully stopped and arrested based on probable cause that Washington shot and killed Grimes.

¶18　"[T]he proper inquiry in an arrest challenge is whether probable cause exists to believe that a particular suspect has committed a crime." *State v. Hughes*, 2000 WI 24, ¶20, 233 Wis. 2d 280, 607 N.W.2d 621. "Probable cause to

arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Probable cause requires "more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." *Id.* The test for probable cause is objective and requires considering the totality of the circumstances. *State v. Weber*, 2016 WI 96, ¶20, 372 Wis. 2d 202, 887 N.W.2d 554.

¶19 Based on the information learned through the police investigation, we conclude that there was probable cause to arrest Washington for the shooting. The connections established between Washington, Grimes, and the Yukon by the police investigation is more than sufficient to establish probable cause to arrest Washington for the shooting death of Grimes. Officers both testified to these connections during the hearing on Washington's motions to suppress and reinforced the existence of these connections with their testimony at Washington's trial. Thus, we are unpersuaded by Washington's argument that his arrest was not supported by probable cause.

*B. Probable Cause to Search the GMC Yukon*

¶20 Washington also argues that the warrant to search the Yukon failed to establish probable cause that the Yukon was in some way connected to the shooting death of Grimes and should be subject to search. As with his argument related to his arrest, he argues that the information obtained by the police was "too vague" to establish probable cause. We again are unpersuaded.

8

¶21 "Search warrants may issue only upon 'a finding of probable cause by a neutral and detached magistrate.'" *State v. Ward*, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517 (citation omitted). "[W]e accord great deference to the determination made by the warrant-issuing magistrate," and the defendant bears the burden to show "that the facts are clearly insufficient to support a probable cause finding." *Id.*

¶22 Similar to probable cause to arrest, probable cause in the context of a search warrant is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit" that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Higginbotham*, 162 Wis. 2d 978, 990, 471 N.W.2d 24 (1991) (citation omitted). "[A] probable cause determination must be based upon what a reasonable magistrate can infer from the information presented by the police." *Ward*, 231 Wis. 2d 723, ¶26. "The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one." *Id.*, ¶30.

¶23 In this case, Detective Fedel prepared the affidavit attached to the search warrant for the Yukon. In his affidavit, Detective Fedel listed the evidence that led police to believe that evidence of Grimes' death would be found in the Yukon. He described the surveillance video depicting a dark-colored SUV with a small sticker on the rear passenger side bumper. He indicated that police found a Yukon for sale on Grimes' social media account that police believed to be the same SUV in the surveillance video based on the consistency of the Yukon's appearance with the SUV in the surveillance video, including the bumper sticker. He stated that police subsequently identified a possible location for the Yukon

based on parking tickets and that the nearby residence was associated with Washington.

¶24 Detective Fedel then stated that police were aware of a burglary complaint by Washington in which Washington identified Grimes as the potential culprit. He further identified that Washington reported that a Playstation gaming system was taken and that a matching Playstation was found in Grimes' vehicle. Additionally, Detective Fedel stated that the Yukon was observed parked outside Washington's residence in the days following the shooting, and he indicated that Washington and Grimes were connected because Grimes had lived with Washington in the days before the shooting but had moved out shortly before.

¶25 The totality of the circumstances provided in Detective Fedel's affidavit supports a reasonable inference that the Yukon was the SUV in the surveillance video connected to Grimes' shooting and a search of the Yukon would uncover evidence of the shooting, and we conclude that the search warrant establishes probable cause to search the Yukon.

¶26 Overall, we reject Washington's arguments that police lacked probable cause to support his arrest and the search of the Yukon. In so doing, we note that the State has raised alternative arguments to support Washington's arrest and the search of the Yukon. As a result of our conclusions that the police had both probable cause to arrest Washington and probable cause to search the Yukon, we do not address the alternative arguments raised by the State. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

10

## II.    Sufficiency of the Evidence

¶27    Washington next argues that the State failed to introduce sufficient evidence at trial to support his conviction for first-degree intentional homicide. He contends that the State's case was built entirely on circumstantial evidence and that it required the jury to engage in what he contends is the prohibited practice of pyramiding inference upon inference.  He further contends that the evidence presented by the State was "scant," "supposition, and conjecture," and he takes issue with the fact that the case was "entirely circumstantial" where no one testified that they saw Washington shoot Grimes.  He further contends that "[n]ot one iota of physical evidence places [] Washington" in the SUV at the time of the shooting.  We disagree.

¶28    In reviewing a challenge to the sufficiency of the evidence, this court

> may not reverse a conviction unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).  "[A]n appellate court may not substitute its judgment for that of the trier of fact," and "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict." *Id.* at 507.  Whether the evidence is direct or circumstantial, the standard for evaluating the sufficiency of the evidence remains the same. *Id.* at 503.  We review a challenge to the sufficiency of the evidence de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶29     Given the overwhelming amount of evidence presented by the State over the course of the five-day jury trial, we would be hard pressed to conclude that the State failed to introduce sufficient evidence that Washington did indeed commit first-degree intentional homicide. The trial court summarized the trial evidence as follows:

> The centerpiece of this evidence was the Yukon found at [Washington]'s residence, which bore unique identifiers matching those seen in surveillance footage near the crime scene. Notably, [Washington]'s attempts to distance himself from the vehicle were contradicted by testimony and records indicating his exclusive use of it. Furthermore, clothing recovered from the Yukon aligned with what [Washington] was observed wearing on the day of the murder, while DNA evidence implicated him further. Connections between the defendant and Grimes, including a prior burglary report and [Washington]'s suspicious statements to his landlord, underscored their relationship. A jail phone call in which [Washington] discussed "dirty laundry" tied him directly to the bloodstained clothing found in the vehicle.

Thus, we conclude that the State introduced sufficient evidence at trial to support Washington's conviction of first-degree intentional homicide for Grimes' death.

¶30     In so concluding, we note that Washington mainly takes issue with the State's case being based entirely on circumstantial evidence and inferences made from that evidence. "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Poellinger*, 153 Wis. 2d at 501. Thus, we do not consider it problematic that, as Washington contends, the State did not present an eyewitness to the shooting or other direct evidence placing Washington at the crime scene.

### III.    Jury Instruction on Circumstantial Evidence

¶31    Washington further argues that the jury was improperly instructed on the use of circumstantial evidence and, because of this, the real controversy was not fully tried. Setting aside Washington's failure to consider evidence beyond that gathered in the initial stages of the investigation in making his argument, the record reflects that Washington failed to lodge an objection at the time of trial to the allegedly improper jury instruction. The failure to object to a jury instruction at the time of trial results in the forfeiture of any error in the instruction. *See* WIS. STAT. § 805.13(3) (2023-24).[4] Washington argues that this court should overlook the lack of an objection to the jury instructions at the time of trial, but this court "has no power to reach an unobjected-to jury instruction." *See **State v. Trammell***, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564. Consequently, we do not discuss Washington's argument any further.

### IV.    Newly Discovered Evidence

¶32    Washington last raises a claim of newly discovered evidence. He asserts that a defense witness failed to appear at trial as a result of actions attributable to the State. As a result, his due process rights were violated, and the

---

[4] We note that WIS. STAT. § 805.13(3) uses the term waiver. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" ***State v. Ndina***, 2009 WI 21, ¶¶28-32, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). Thus, while the statute uses the term waiver, the appropriate term to apply here is forfeiture.

All references to the Wisconsin Statutes are to the 2023-24 version.

witness's testimony amounts to newly discovered evidence for which he is entitled to a hearing.[5]

¶33    To decide whether Washington is entitled to an evidentiary hearing on his claim of newly discovered evidence, we first "determine whether the motion on its face alleges sufficient facts that, if true, would entitle the defendant to relief." *State v. McAlister*, 2018 WI 34, ¶25, 380 Wis. 2d 684, 911 N.W.2d 77 (citation omitted).  This is a question of law subject to our de novo review.  *Id.* However, "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court has discretion to grant or deny a hearing.  *Id.*, ¶26 (citation omitted).

¶34    Newly discovered evidence requires that "a defendant must prove: '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'"  *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).

¶35    "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly[]discovered evidence, it would have had a reasonable doubt as to the

---

[5] Washington again raises the argument that the real controversy was not fully tried, and in this context, he grounds his argument on the fact that the defense witness did not testify.  As a result of our conclusion, we reject Washington's argument.  Washington also makes a reference that he is entitled to a hearing if he makes a legally and facially sufficient claim of newly discovered evidence and any case law in Wisconsin allowing a contrary result is invalid as a result of the Supremacy Clause.  We consider any argument on this point undeveloped, and we decline to address it further.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

defendant's guilt." *Id.* "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. "A court reviewing the newly discovered evidence should consider whether a jury would find that the evidence 'had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt.'" *Id.* (citation omitted).

¶36    The trial court denied Washington's claim of newly discovered evidence finding that the witness did not demonstrate that she had any knowledge of who shot Grimes and because her testimony that she overheard Grimes arrange a drug deal on the phone would not have altered the outcome of the trial given the overwhelming amount of evidence pointing to Washington as the shooter. We discern no error in the trial court's denial of Washington's claim of newly discovered evidence for this reason, and the record conclusively demonstrates that the witness's testimony would not have changed the outcome of the trial.

¶37    Washington, however, argues that the role the State played in the witness's non-appearance at trial violated his due process rights and excuses the typical showing for demonstrating newly discovered evidence. Washington points to the fact that, in her affidavit, the witness indicates that she appeared at trial ready to testify, but she contends that an altercation occurred in the hallway between her and Grimes' family. She further maintains that the bailiff instructed her to return home and that she would be contacted if she was needed to testify.

¶38    Based upon a review of the record, we are unpersuaded that Washington's due process rights were violated because the State is somehow responsible for his witness's non-appearance. Contrary to the witness's assertions,

the record instead reflects that she simply failed to appear despite trial counsel's attempts to contact her. At the outset of the defense case, Washington's trial counsel informed the trial court that he received a text message from his investigator that she "was efforting to get [the witness] here" and trial counsel requested permission to search the hallway for his witness. When trial counsel discovered that his witness was not in the hallway, he requested a body attachment because the witness had been subpoenaed but had not appeared. The trial court then issued a warrant for the witness. The following day, trial counsel updated the trial court that his efforts to locate to the witness were unsuccessful.

¶39 The record pertaining to the witness's non-appearance contains no discussion of any altercation in the hallway outside the courtroom and no discussion that the bailiff advised her to go home and return if contacted. Indeed, as the trial court recognized in denying Washington's motion, the same bailiff who instructed the witness to return home was presumably present at the proceedings and the bailiff would have been derelict in failing to inform the court of the altercation and his instruction to the witness to leave. Rather than support the witness's account of her non-appearance, the record instead reflects that trial counsel did try to contact the witness and the trial court issued a warrant at trial counsel's request in furtherance of securing the witness's appearance at trial. Those efforts, though, were ultimately unsuccessful.

¶40 Therefore, we are unpersuaded by Washington's claim that his witness amounts to newly discovered evidence.

**CONCLUSION**

¶41 In sum, we reject Washington's arguments challenging the trial court's decision to deny Washington's motions to suppress, Washington's claim

16

that the State failed to introduce sufficient evidence at trial to support his conviction for first-degree intentional homicide for Grimes' death, that the jury was improperly instructed on the use of circumstantial evidence, and that he has made a claim for newly discovered evidence. We, therefore, affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.